UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAIQUAN K. FALLS,

                Plaintiff,

            -v-

(POLICE OFFICER) DETECTIVE MICHAEL
PITT; (POLICE OFFICER) CARLOS
CANARIO; (POLICE OFFICER) ANDRES
ARESTIN; (POLCIE OFFICER) JONATHAN
SAINTICHE; (POLICE OFFICER) SERGEANT
ANDERSON; (POLICE OFFICER) JOHN
PEREZ; (POLICE OFFICER) MENDEZ;
(REGISTERED NURSE) BLANCA LEMOS;
(PRACTITIONER) HILLARY DURBIN;
(PHYSICIAN) ALAN MADELL,

                Defendants.

16-CV-8863 (KMK)

OPINION & ORDER

Appearances:

Raiquan K. Falls
Attica, NY
*Pro Se Plaintiff*

Sean B. Maraynes, Esq.
Milan P. Spisek, Esq.
Wilson Elser, Moskowitz Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendants Alan Madell, M.D., and Hillary Durbin-French, N.P.*

KENNETH M. KARAS, District Judge:

      Plaintiff Raiquan K. Falls ("Plaintiff") brought this Action against Defendants City of

Newburgh Police Department Detective Michael Pitt ("Pitt"), Police Officer Carlos Canario

("Canario"), Police Officer Andres Arestin ("Arestin"), Police Officer Jonathan Saintiche

("Saintiche"), Sergeant Anderson ("Anderson"), Police Officer John Perez ("Perez"), Police

Officer Mendez ("Mendez") (collectively with the others, "Newburgh Police Defendants"), and

Doctor Alan Madell ("Dr. Madell"), Nurse Practitioner Hilary Durbin-French ("Nurse

Practitioner Durbin-French"), and Nurse Blanca Lemos ("Nurse Lemos") (together with Newburgh Police Defendants, "Defendants") alleging civil rights violations in relation to cavity searches he endured while held at the City of Newburgh Police Department and Saint Luke's-Cornwall Hospital ("Saint Luke's"). (*See* Am. Compl. (Dkt. No. 22).)[1] Before the Court is a Motion To Dismiss on behalf of Dr. Madell and Nurse Practitioner Durbin-French (together, "Moving Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Notice of Motion ("Motion") (Dkt. No 64).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion. (Am. Compl.) At the time of the events described herein, Plaintiff was a pretrial detainee in the custody of the City of Newburgh Police Department. (*Id.* II.A.)[2]

On May 8, 2015 at approximately 5:00 p.m., Plaintiff was arrested following a pursuit on foot in "the area of 15 Lutheran Street" in the City of Newburgh. (*Id.* II.D ¶ 1.) According to Plaintiff, City of Newburgh Police Department Officers Canario, Perez, and Mendez were dispatched to the area "for a narcotic[s] crime report." (*Id.*) The dispatcher informed the officers that there were two individuals selling narcotics in front of a residence, "fully describing [Plaintiff] as selling narcotics to an unknown person." (*Id.*) Plaintiff "was standing on the

---

[1] Plaintiff brought this Action against "Hillary Durbin," but Counsel uses the name "Hillary Durbin-French." (*See, e.g.*, Dkt. Nos. 64–66.) The Clerk of the Court is instructed to amend the caption accordingly.

[2] The Amended Complaint is on a standard prisoner complaint form without standard paragraph numbering. The Court will therefore cite to the Amended Complaint by heading and sub-heading number, and when applicable, paragraphs within those sub-headings.

2

sidewalk" when "a police patrol car pulled over further up the street." (*Id.*) Parez, the diver, remained inside the car, and Canario got out of the vehicle and approached Plaintiff "with his hands on his hips gesturing that he would draw his weapon." (*Id.*) The officer began to run towards Plaintiff and called out "Falls, I'll shoot you right in the back if you run." (*Id.*) Plaintiff's "only reaction was to flee because [he] feared for [his] life [and the] officers never stated that [he] was under arrest." (*Id.*) The foot pursuit lasted two blocks, and Plaintiff was "apprehended by several more police officers after being beaten by them in the backyard of 12 Dubois Street." (*Id.*) During his arrest, "officers tightened [his] handcuffs where it cut off [his] circulation," which caused "intensive bruising." (*Id.*)

At approximately 5:17 p.m., Plaintiff was "taken into custody and transported to the police station," (*id.*), where he was "charged with obstructing governmental administration in the second degree," (*id.* II.D ¶ 2). Plaintiff allegedly "did not know what [he] was charged with because they ignored [him] every time [he] asked them." (*Id.*) He was "ankle shackled to the bench" and "questioned about . . . what [he] knew about unsolved crimes and [his] prior record," but Plaintiff "refused to answer such questions" and "asked to speak to [his] attorney, but was denied." (*Id.*)

Plaintiff alleges the supervisor, Anderson, then ordered the officers to conduct a strip search, which Plaintiff avers "was more like a full visual body cavity search that went wrong." (*Id.*)[3] Initially, he "did not comply," but then the officers told him "they were authorized to use

---

[3] Plaintiff alleges that Anderson's "conduct of advising [four] police officers to perform a search and standing by or failing to intervene while fellow officers visually and manually inspected [his] body cavity and forcibly went inside of [his] cavity area was an unreasonable search." (Am. Compl. II.D ¶ 5.) This is a legal conclusion that the Court need not accept as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

3

deadly force if needed in order to get [him] to comply." (*Id.*) Plaintiff was then "led into a small mop room," about five feet from the bench he had been shackled to, which had "no cameras." (*Id.*) In the mop room, he allegedly "fully undressed and stood naked before [Pitt, Canario, Arestin, and Saintiche]." (*Id.*) He was then told to "face the wall, bend over, spread my asscheeks then squat and cough while all of the officers visually and manually inspected [his] body cavity." (*Id.*) At first, "there were no contraband located." (*Id.*) Plaintiff was asked to repeat the process, and he refused. (*Id.*) The "officers then came up behind [Plaintiff] while [he] was still naked and pinned both of [his] arms unto [sic] the wall and tried to spread [his] legs to as far as they would go." (*Id.*) When Plaintiff resisted, "[a]ll of the officers slammed [him] onto the floor, kicking and punching [him] in the ribs." (*Id.*) "Another officer forcefully stuck his fingers into [Plaintiff's] body cavity to recover the drugs that w[ere] hidden in there by [Plaintiff]." (*Id.*) According to Plaintiff, the search lasted "at least 10 minutes" and was "unmonitored." (*Id.*) However, "the booking room's camera could clearly see these [four] officers exiting this room" with Plaintiff at around 5:30 p.m. (*Id.*) Plaintiff avers that Newburgh Police Defendants did not "have a specific articulable factual basis supporting a reasonable suspicion to believe that [he] was secreting evidence inside of [his] body cavity." (*Id.* II.D ¶ 5.) Rather, "Pitt used a fabricated statement obtained in a violation of [Plaintiff's] Fifth Amendment 'right to remain silent' to support a reasonable cause for a search warrant." (*Id.*) Additionally, "[t]he record did not disclose whether [there was a] tip given to [the] detective [about Plaintiff] having a reputation for 'cheeking' drugs." (*Id.*)

Following the search, Plaintiff was "brought back into the booking room," and again shackled by his ankles to the bench. (*Id.* II.D ¶ 3.) Canario and Arestin "were about to store the drugs inside of the evidence room," when Plaintiff "snatched the drugs from out of their hands

4

and . . . tried to swallow it," but was unsuccessful in doing so. (*Id.*) The officers recovered the drugs from Plaintiff's mouth by tasering and then pepper spraying him. (*Id.*) The officer tased Plaintiff in the "back 'spine'" and Plaintiff fell on his face. (*Id.*) The officers continued to pepper spray him in the face. (*Id.*) Plaintiff alleges "this excessive force" happened "while he was ankle shackled to the bench." (*Id.*) Following the incident, he "layed [sic] on the floor and complained about [his] back, neck, and . . . face." (*Id.*)

At approximately 6:47 p.m., Plaintiff was brought to Saint Luke's, (*id.* II.D ¶ 4), "to wash the pepper spray out of [his] eyes," (*id.* II.D ¶ 3). Plaintiff's "emergency room caregivers" were Dr. Madell, Nurse Practitioner Durbin-French, and Nurse Lemos. (*Id.* II.D ¶ 4.) Plaintiff alleges that "Lemos was the nurse who forcibly stuck her fingers inside of [Plaintiff's] rectum." (*Id.*)[4] "Lemos was told by police officers to search [his] body cavity." (*Id.*) When Plaintiff asked for a search warrant for the body cavity search, Nurse Lemos "refused to answer" and told him "if you don't comply with the search [the] officers can use deadly force if needed." (*Id.*) Plaintiff was handcuffed to the hospital bed, and when he resisted the search the officers "forced [him] to turn over onto [his] side while the nurse pulled [his] gown off then stuck her fingers into [his] body cavity." (*Id.*) According to Plaintiff, there was no contraband recovered. (*Id.*) At the time of the search, there were no other physicians, nurses, or security guards in the emergency room "to supervise [Nurse Lemos] and monitor her search"—"it was just [Plaintiff], the 'female' nurse and the police officers." (*Id.*; *see also* II.D ¶ 6 ("There were no physician[s] present when the registered nurse conducted the search, nor were there any security guards in the emergency room.").) Plaintiff contends that "a strip search of a male by a female was unreasonable"

---

[4] Plaintiff was initially unable to identify the Nurse as Lemos because he "asked her what was [sic] her name because she didn't have on any ID tag for [him] to identify her as." (*Id.* II.D ¶ 4.)

5

because "she touched [his] buttocks and forcibly went inside of [his] cavity area in the process of conducting the search," and "a strip search performed by a member of the opposite sex, in the absence of a special circumstance, violate[d] [his] limited right to privacy." (*Id.* II.D ¶ 5.) Additionally, Plaintiff contends that the four male police officers who participated by helping the nurse conduct the search also violated his right to privacy. (*Id.*) Plaintiff further contends that the police officers' agreement with the nurse to violate his constitutional rights and conceal their illegal activities was a conspiracy to violate his civil rights. (*Id.*)[5]

Plaintiff alleges that "[d]octors also denied [Plaintiff his] right to receive immediate medical attention by not treating [him] for [his] rectum bleeding, constipation[,] neck and back injuries." (*Id.* II.D ¶ 6.) Instead, "[d]octors fabricated evidence by stating that [he] made no complaints about such things" and said his "pain level was zero, when it was a number [ten]." (*Id.*; *see also* II.D. ¶ 4 ("The nurses and doctors fabricated evidence by stating that [Plaintiff] didn't complain about neck and back, and also rectum injuries.") Plaintiff further alleges the "police officers fabricated evidence by stating that [he] had swallowed the contraband" recovered from the body cavity search at the police station. (*Id.* II.D ¶ 4.) Plaintiff avers he actually spit out the contraband after he was pepper sprayed. (*Id.*)

Plaintiff brings claims against all of the Defendants for "violating [his] Fourth Amendment Constitutional rights to be free from unreasonable search and seizure," as well as claims for "unlawful arrest, malicious abuse of process[,] excessive force," and violation of his "limited right to privacy." (*Id.* II.D ¶ 6.) Plaintiff also wishes to file criminal charges against all the Defendants. (*Id.*) Plaintiff contends that as a result of this incident, he sustained "serious

---

[5] Plaintiff's allegations regarding the reasonableness of the search and violations of his right to privacy are also legal conclusions that the Court need not accept as true. *Papasan*, 478 U.S. at 286.

long[-]term mental and physical injuries," including "pain and suffering, severe mental anguish, psychological trauma, extreme emotional distress and complex post[-]traumatic stress." (*Id.* ¶ III.) He "[a]lso suffered from neck and back pains that w[ere] never reported, intensive bruising on [his] wrists and on the right side of [his] ribs." (*Id.*) Additionally, Plaintiff's "[c]onstipation and rectum bleeding lasted well over a month," and he was "scared to get treated because [he] now h[as] no trust for any nurses[,] doctors[,] or police officers." (*Id.*) Plaintiff allegedly continues to suffer from "nightmares and flashbacks." (*Id.*)

B.  Procedural History

Plaintiff filed his initial Complaint in this Action on November 15, 2016 against Arestin, Pitt, Canario, Saintiche, and "Registered Nurse Jane Doe." (Compl. (Dkt. No. 2).) On November 17, 2016, Plaintiff's application to proceed in forma pauperis was granted. (Dkt. No. 4.) On November 18, 2016, the Court issued an Order directing the County Attorney for the County of Orange to ascertain the identity of the Jane Doe nurse at St. Luke's involved in the events on May 8, 2015. (Dkt. No. 6.) On December 15, 2016, Plaintiff wrote the Court seeking to add an additional defendant. (Dkt. No. 9.) Pursuant to a memo endorsement, the Court granted Plaintiff leave to submit an amended complaint by January 31, 2017. (*Id.*) On January 20, 2017, Plaintiff wrote the Court a letter stating he had not yet received the names of the Jane Doe nurse and was unable to prepare his amended complaint. (Dkt. No. 18.)

On February 7, 2017, Plaintiff submitted the Amended Complaint, (Am. Compl.), and a list of parties in the Amended Complaint, (Dkt. No. 19). The Amended Complaint added Dr. Madell, Nurse Practitioner Durbin-French, Nurse Lemos, Anderson, Perez, and Mendez as defendants. (Am. Compl.) On April 27, 2017, Plaintiff submitted an application asking the

7

Court to appoint pro bono counsel to represent him. (Dkt. No. 26.) The Court denied the request without prejudice. (Dkt. No. 27.)

On July 18, 2017, Dr. Madell and Nurse Practitioner Durbin-French each filed an Answer to the Amended Complaint. (Dkt. Nos. 36–37.) On August 7, 2017, Counsel for Dr. Madell and Nurse Practitioner Durbin-French wrote the Court requesting to move for dismissal. (Dkt. No. 41.) The Court denied the request, as the letter failed to detail the basis of the potential motion. (Dkt. No. 43.) On August 21, 2017, Dr. Madell and Nurse Practitioner Durbin-French filed a letter explaining the grounds on which they wished to move to dismiss. (Dkt. No. 44.) The Court set a briefing schedule. (Dkt. No. 45.)[6]

On October 6, 2017, Moving Defendants filed the Motion To Dismiss, as well as a Memorandum of Law. (Motion; Defs.' Mem. Law in Supp. of Mot. To. Dismiss ("Defs.' Mem") (Dkt. No. 66).) Plaintiff failed to file an opposition or otherwise respond to Moving Defendants' Motion, (Dkt. No. 80), and the Court deemed the Motion fully submitted, (Dkt. No. 81).

Meanwhile, discovery proceeded as to the other Defendants. Following the completion of discovery, the Newburgh Police Defendants sought leave to file a summary judgment motion. (Dkt. No. 101.) Dr. Madell, Nurse Practitioner Durbin-French, and Nurse Lemos also sought leave to file a summary judgment motion, but noted that decision on the instant motion was still pending. (Dkt. No. 102.)[7] Pursuant to a memo endorsement, the Court set a briefing schedule for all Defendants to file summary judgment motions. (Dkt. No. 104.)

---

[6] On September 20, 2017, Counsel for Dr. Madell and Nurse Practitioner Durbin-French requested a modification of the briefing schedule, (Dkt. No. 60), which the Court granted, (Dkt. No. 61).

[7] Plaintiff sent a letter dated July 12, 2018 requesting an extension of time to file an opposition in three of his pending cases. (Dkt. No. 103.) The Court informed the Plaintiff that his opposition to any summary judgment motion was not due until October 15, 2018, and thus,

8

II. Discussion

A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

---

there was no need for an extension. (Dkt. No. 105.) Plaintiff later informed the Court that the extension request referred to the pre-motion letters. (Dkt. No. 106.)

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations. . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves

regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

Moving Defendants argue that the Amended Complaint should be dismissed against them because Plaintiff fails to allege a plausible claim against them for a § 1983 conspiracy. (Defs.' Mem 4.) More specifically, Moving Defendants argue Plaintiff has not alleged the personal involvement of Dr. Madell or Nurse Practitioner Durbin-French in the alleged conspiracy. (*Id.*)

To state a claim for a conspiracy under 42 U.S.C. § 1983, Plaintiff must allege facts showing: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *McGee v. Dunn*, No. 09-CV-6098, 2015 WL 9077386, at *5 (S.D.N.Y. Dec. 16, 2015) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999), *aff'd*, 672 F. App'x 115 (2d Cir. 2017). "A conspiracy claim fails, however, where allegations are conclusory." *Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014). Here, the Amended Complaint does not allege an agreement involving Dr. Madell or Nurse Practitioner Durbin-French and any of the Newburgh Police Defendants to violate Plaintiff's rights, and thus fails to state a § 1983 conspiracy. That they were all in the St. Luke's Emergency Room at the time of the alleged search is insufficient to plausibly plead agreement. *See Rose v. Garritt*, No. 16-CV-3624, 2018 WL 443752, at *8 (S.D.N.Y. Jan. 16, 2018) (dismissing § 1983 claim that the nurse "'purposely omitted' [the p]laintiff's descriptions of his injuries and the assault 'to limit [the p]laintiff's capacity to file and win an Eighth Amendment suit'" because the plaintiff failed to allege an agreement between the nurse and the assaulting defendants (alterations and citations omitted)); *Thomas v. Demeo*, No. 15-CV-9559,

2017 WL 3726759, at *12 (S.D.N.Y. Aug. 28, 2017) (dismissing § 1983 conspiracy claim because the complaint did not "provide even circumstantial allegations that the alleged conspiracy existed, much less any details as to the extent of the alleged agreement or how [the] [d]efendants collectively carried it out"). Further, as explained below, Plaintiff has not made any allegations regarding what Dr. Madell or Nurse Practitioner Durbin-French did to violate Plaintiff's rights. Accordingly, Plaintiff's conspiracy claim against Dr. Madell and Nurse Practitioner Durbin-French under § 1983 must be dismissed.

To the extent that Plaintiff asserts a claim against Dr. Madell or Nurse Practitioner Durbin-French for their conduct separate from the conspiracy claims, it is unclear from the Amended Complaint whether Dr. Madell or Nurse Practitioner Durbin-French are state actors. To state a claim for any constitutional violation under § 1983, a plaintiff must allege that "a person acting under color of state law deprived him or her of a right secured by the Constitution or laws of the United States." *Oliveira v. Price Law Firm*, No. 14-CV-4475, 2014 WL 4088199, at *2 (S.D.N.Y. July 30, 2014); *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."); *Schiff v. Suffolk Cty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015) (same). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). Thus, in order to survive a motion to dismiss, "a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Here,

Plaintiff has failed to allege Moving Defendants were either state actors or acting under the color of state law.

In any event, construing Plaintiff's Amended Complaint liberally to suggest Moving Defendants are subject to claims under § 1983, Plaintiff's claims would nonetheless fail because Plaintiff has failed to allege the Moving Defendants' personal involvement in the constitutional violation. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege conduct by Dr. Madell or Nurse Practitioner Durbin-French that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

The only lines of the Amended Complaint that specifically reference Dr. Madell and Nurse Practitioner Durbin-French by name state that Plaintiff's "Emergency Room caregivers

13

were Alan Madell which [sic] is a physician. Hillary Durbin which [sic] is a practitioner." The Complaint does not allege either were present, let alone participated directly or somehow permitted, the allegedly illegal body cavity search. *Grullon*, 720 F.3d at 139 (listing as a category of personal involvement when a defendant participates directly in the alleged constitutional violation). In fact, Plaintiff alleges that "[Nurse] Lemos was the nurse who forcibly suck her fingers inside [his] rectum" and makes clear that "there was no other nurse inside the emergency room to supervise her and monitor the search," (Am. Compl. II.D ¶ 4), nor "were [any] physician[s] present when the registered nurse conducted the search," (*id.* II.D ¶ 6). Plaintiff does not allege that either Dr. Madell or Nurse Practitioner Durbin-French were responsible for supervising Nurse Lemos, and thus, they cannot be liable for being "grossly negligent in supervising" her conduct. *See Grullon*, 720 at 139 (listing as a category of personal involvement when a defendant "was grossly negligent in supervising subordinates who committed the wrongful acts" (internal quotation marks omitted)).

Furthermore, Plaintiff does not allege that Dr. Madell or Nurse Practitioner Durbin-French were even informed of the search, and thus neither can be responsible for "fail[ing] to remedy the wrong." *Id.* (italics and internal quotation marks omitted). Additionally, the Amended Complaint lacks any allegation that Dr. Madell or Nurse Practitioner Durbin-French failed to intervene in the search by "exhibit[ing] deliberate indifference" to Plaintiff's rights "by failing to act on information indicating that unconstitutional acts were occurring." *Id.* (italics and internal quotation marks omitted). Nor does Plaintiff allege that either Dr. Madell or Nurse Practitioner Durbin-French was aware that St. Luke's or Nurse Lemos had a history of conducting unconstitutional searches, such that the Court could reasonably infer that either knew Plaintiff would be subject to an unconstitutional search. *See id.* (listing as a category of personal

14

involvement when a defendant allows "a policy or custom" of unconstitutional practices to continue).[8]  The Court therefore grants the Moving Defendants' Motion to Dismiss.

III.  Conclusion

For the following reasons, Moving Defendants' Motion To Dismiss is granted.  This Opinion does not impact Plaintiff's outstanding claims against the remaining Defendants.  Moreover, because this is the first adjudication of Plaintiff's claims against Dr. Madell and Nurse Practitioner Durbin-French on the merits, the dismissal is without prejudice.  If Plaintiff wishes to file a Second Amended Complaint alleging claims against Dr. Madell and Nurse Practitioner Durbin-French, he must do so within 30 days of the date of this Opinion & Order.  Failure to do so might result in dismissal of the claims against Dr. Madell and Nurse Lemos with prejudice.[9]  Plaintiff should include within that Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.  The Amended Complaint will replace, not supplement, the original complaint.  The Amended Complaint must contain *all* of the claims and factual allegations the Plaintiff wishes the Court to consider, including those against Defendants who have not yet filed a Motion To Dismiss.  The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda.

---

[8] Plaintiff further alleges that unnamed "[d]octors also denied [him his] right to receive immediate medical attention by not treating me for my rectum bleeding, constipation[,] neck and back injuries." (*Id.* II.D ¶ 6.)  He also claims that unnamed nurses and "[d]octors fabricated evidence by stating that [he] made no complaints about such things" and said his "pain level was zero, when it was a number [ten]." (*Id.*; *see also* II.D ¶ 4 ("The nurses and doctors fabricated evidence by stating that [Plaintiff] didn't complain about neck and back, and also rectum injuries.").)  However, Plaintiff does not specifically allege that either Dr. Madell or Nurse Practitioner Durbin-French was involved in denying him medical care or fabricating evidence.

[9] As all the claims against Dr. Madell and Nurse Practitioner Durbin-French are dismissed, Dr. Madell and Nurse Practitioner Durbin-French should not file a Motion for Summary Judgement, (*see* Dkt. No. 104), unless Plaintiff files a Second Amended Complaint.

The Clerk of the Court is directed to mail a copy of this Opinion & Order to Plaintiff and terminate the pending Motion. (Dkt. No. 64.)

SO ORDERED.

DATED: August 8, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE