UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAIQUAN K. FALLS,

Plaintiff,

-v-

(POLICE OFFICER) DETECTIVE MICHAEL PITT; (POLICE OFFICER) CARLOS CANARIO; (POLICE OFFICER) ANDRES ARESTIN; (POLICE OFFICER) JONATHAN SAINTICHE; (POLICE OFFICER) SERGEANT ANDERSON; (POLICE OFFICER) JOHN PEREZ; (POLICE OFFICER) MENDEZ; (REGISTERED NURSE) BLANCA LEMOS; (PRACTITIONER) HILLARY DURBIN; (PHYSICIAN) ALAN MADELL,

Defendants.

16-CV-8863 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

Plaintiff Raiquan K. Falls ("Plaintiff") brought this Action against Defendants Newburgh Police Department Detective Michael Pitt ("Pitt"), Police Officer Carlos Canario ("Canario"), Police Officer Andres Arestin ("Arestin"), Police Officer Jonathan Saintiche ("Saintiche"), Sergeant Anderson ("Anderson"), Police Officer John Perez ("Perez"), Police Officer Mendez ("Mendez") (collectively with the others, "Police Defendants"), and Doctor Alan Madell ("Madell"), Nurse Practitioner Hilary Durbin-French ("Durbin-French"), and Nurse Blanca Lemos ("Lemos") (together with Police Defendants, "Defendants") alleging civil rights violations in relation to cavity searches conducted during Plaintiff's initial detention and again at Saint Luke's Cornwall Hospital ("Saint Luke's"). (See Am. Compl. (Dkt. No. 22).

Before the Court are Plaintiff's Motion to Amend ("the Motion"), (Dkt Nos. 111, 125), and his renewed Application for the appointment of pro bono counsel ("the Application"), (Dkt.

No. 146; *see also* Dkt. No. 26). For the following reasons, the Motion is granted in part and denied in part, and the Application is denied.

## I. Background

Plaintiff filed his initial Complaint on November 15, 2016 against Arestin, Pitt, Canario, Saintiche, and "Registered Nurse Jane Doe." (Compl. (Dkt. No. 2).) On November 17, 2016, Plaintiff's application to proceed in forma pauperis was granted. (Dkt. No. 4.) On November 18, 2016, the Court directed the County Attorney for the County of Orange to ascertain the identity of the Jane Doe nurse at St. Luke's involved in the events on May 8, 2015. (Dkt. No. 6.) On February 7, 2017, Plaintiff submitted the Amended Complaint, (Am. Compl.), and a list of parties in the Amended Complaint, (Dkt. No. 19). The Amended Complaint added Madell, Durbin-French, Lemos, Anderson, Perez, and Mendez as Defendants. (Am. Compl.) On April 27, 2017, Plaintiff submitted an application asking the Court to appoint pro bono counsel to represent him. (Dkt. No. 26.) On May 2, 2017, the Court denied the request without prejudice. (Dkt. No. 27.)

On October 6, 2017, Madell and Durbin-French moved to dismiss all claims filed against them (the "Motion To Dismiss"). (Dkt. No. 64–66).) Plaintiff failed to file an opposition or otherwise respond, (Dkt. No. 80), and on January 22, 2018, the Court deemed the Motion To Dismiss fully submitted, (Dkt. No. 81).

Meanwhile, discovery proceeded as to the other Defendants. Following the completion of discovery, on July 9, 2018, the Police Defendants sought leave to file a summary judgment motion. (Dkt. No. 101.) The same day, Madell, Durbin-French, and Lemos also sought leave to file a summary judgment motion, but noted that decision on Madell and Durbin-French's Motion

To Dismiss was still pending. (Dkt. No. 102.) On July 18, 2018, the Court set a briefing schedule for all Defendants to file summary judgment motions. (Dkt. No. 104.)

On August 8, 2018, the Court issued an Opinion & Order granting Madell and Durbin-French's Motion To Dismiss. ("August 2018 Opinion" (Dkt No. 109).) However, the Court granted Plaintiff 30 days to amend his complaint and correct the deficiencies with respect to the dismissed claims. (*Id.* at 16.) On September 6, 2018, Plaintiff signed his Proposed Second Amended Complaint ("PSAC"), which was docketed on September 11, 2018. (Dkt. No. 111.) On September 14, 2018, Police Defendants filed a letter objecting to the PSAC on the grounds that it "purports to assert new matters and claims with regard to them . . . without leave of the Court on the eve of summary judgment practice." (Dkt. No. 113.) On November 7, 2018, the Court issued an Order construing Plaintiff's PSAC as a Motion to Amend, and setting a schedule for Police Defendants' Response and Plaintiff's Reply. ("November 2018 Order" (Dkt. No. 125).) The Court simultaneously stayed the briefing of Defendants' expected summary judgment motions pending resolution of Plaintiff's Motion to Amend. (*Id.*) On December 4, 2018, Police Defendants filed their Response and accompanying papers. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Amend ("Defs.' Mem.") (Dkt. No. 127); Aff. of David L. Posner, Esq. ("Posner Aff.") (Dkt. Nos. 126).) On February 26, 2019, Plaintiff filed his Reply, (Pl.'s Reply Mem. of Law in Further Supp. of Mot. ("Pl.'s Reply Mem.") (Dkt. No. 133).)

On April 23, 2020, Plaintiff filed a "Declaration in Support of the Plaintiff's Motion for Appointment of Counsel," ("Pl.'s Decl." (Dkt. No. 146)), thereby renewing his earlier (previously rejected) Application for appointment of pro bono counsel. (Dkt. No. 26.)

## II. Discussion

### A. The Motion to Amend

#### 1. Applicable Legal Principles

As explained in its November 2018 Order, although the Court granted Plaintiff permission to amend in light of the dismissal of claims against Madell and Durbin-French, that permission "cannot reasonably be read to allow Plaintiff carte blanche to add new claims against the Police Defendants, who were not movants in the Motion To Dismiss." (Nov. 2018 Order 3.) Accordingly, insofar as Plaintiff has added claims beyond those that were included in his Amended Complaint, his pleadings must satisfy the traditional requirements of Federal Rule of Civil Procedure 15(a). (*See id.* 4 n.1.)

Under Rule 15(a), where a party cannot amend as a matter of course, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave," however, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). While the Court "has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party . . . outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (quotation marks and citations omitted); *New Amsterdam Capital Partners, LLC v. Wilson*, No. 11-CV-9716, 2015 WL 1137576, at *2 (S.D.N.Y. Mar. 13, 2015) ("[R]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." (citation omitted)). Thus, in deciding whether to grant a motion to amend a pleading, the Court considers "(i) whether the party seeking the amendment has unduly delayed; (ii) whether that

party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." *Sandler v. Montefiore Health Sys., In.*, No 16-CV-2258, 2017 WL 2226599, at *2 (S.D.N.Y. May 22, 2017). The Second Circuit has explained that to determine whether an amendment unduly prejudices a non-moving party, the Court should "generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Portelos v. City of New York*, No. 12-CV-3141, 2015 WL 5475494, at *2 (E.D.N.Y. Sept. 15, 2015) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).

2. Application

The Court first considers which, if any, of the claims asserted in Plaintiff's PSAC amount to "new claims against the Police Defendants" such that they must be analyzed under Rule 15(a) standards. (*See* Nov. 2018 Order 3–4). The Court then conducts the relevant analysis to consider whether to permit the addition of such claims.

a. Identifying the New Claims

In Plaintiff's Amended Complaint, Plaintiff alleged that, at approximately 5:00 p.m. on May 8, 2015, he was arrested following a pursuit on foot in "the area of 15 Lutheran Street" in the City of Newburgh. (Am. Compl. II.D ¶ 1.) Plaintiff described how officers then conducted an invasive strip search, and seized drugs hidden on his body. (*Id.* II.D ¶¶ 2-5.) Following the search, when Plaintiff was "brought back into the booking room" and shackled by his ankles to a bench, he "snatched the drugs from out of [the officers'] hands and . . . tried to swallow it," but was unsuccessful in doing so. (*Id.* II.D ¶ 3.) The officers recovered the drugs from Plaintiff's

mouth by tasering and pepper spraying him. (*Id.*) Plaintiff was then brought to Saint Luke's to "wash the pepper spray out of [his] eyes," and where his "emergency room caregivers" were Madell, Durbin-French, and Lemos. (*Id.* II.D ¶¶ 3–4.) Plaintiff alleges that Lemos "forcibly stuck her fingers inside of [Plaintiff's] rectum" in an unsuccessful search for contraband. (*Id.*) Based on the above factual allegations, the Amended Complaint raised claims for "violating [Plaintiff's] Fourth Amendment Constitutional rights to be free from unreasonable search and seizure," as well as claims for "unlawful arrest, malicious abuse of process[,] excessive force," civil rights conspiracy, and violation of his "limited right to privacy." (*Id.* II.D ¶ 6.)

Plaintiff's PSAC closely resembles his Amended Complaint. The PSAC names the same ten Defendants, (*see* Am. Compl. I.B; PSAC III ¶¶ 7– 18), and describes precisely the same events (while adding more factual detail). (*See* Am. Compl. II.D; PSAC V). As Police Defendants acknowledge, the PSAC alleges "the same false arrest and excessive force claims," the same "challenge to the strip search under the Fourth Amendment," and the same "malicious abuse of process" claims as the Amended Complaint. (Defs.' Mem. 5.) However, Police Defendants argue that Plaintiff has also added "entirely new claims such as malicious prosecution with respect to the search warrant and criminal charges," "First Amendment [r]etaliation," "deliberate indifference/supervisor liability" with respect to Anderson, sexual harassment and abuse, and conspiracy between the officers and medical officials. (*Id.*) Police Defendants further argue that these "new causes of action are futile as they fail to state claims or are otherwise deficient as a matter of law," and that permitting these claims at this late date will "prejudice defendants who have already taken [P]laintiff's deposition." (*Id.*) Police Defendants therefore urge the Court not to permit Plaintiff to add these additional claims. (*Id.*)

The Court concludes that Police Defendants' arguments are correct with respect to some, but not all, of the identified claims, because only some of these claims are (as Police Defendants assert) "entirely new." (*Id.*) First, with respect to his sexual harassment and sexual abuse claims, Plaintiff's Amended Complaint already raised substantially similar allegations. For example, the Amended Complaint alleged that the Police Defendants "visually and manually inspected [his] body cavity," "pinned [his] arm unto the wall and tried to spread my legs as far as they would go," and that one officer "forcefully stuck his fingers into my body cavity to recover the drugs that were hidden in there by me." (Am. Compl. II.D ¶ 2.) The Amended Complaint further alleged "the officers then forced me to turn over onto my side while the nurse pulled my gown off then stuck her fingers into my body cavity." (*Id.* II.D ¶ 4.) Relatedly, the Amended Complaint alleged that Defendants used "excessive force" and "commit[ted] sodomy." (*Id.* II.D ¶ 6.) Because such allegations clearly suggested constitutional claims for sexual abuse and sexual harassment incident to his detention and search, the mere fact that Plaintiff did not previously label these allegations as "sexual abuse" explicitly is immaterial, particularly in light of the Court's obligation to "construe[ a pro se plaintiff's complaint] liberally and interpret[ it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam).[1]

[1] While Plaintiff's PSAC labels his sexual abuse and sexual harassment claims (as well as additional excessive force claims) as arising under the Fourteenth Amendment, (*see* PSAC VI ¶ 119–22, 124–25, 129–30), the Court construes these claims as arising under the Fourth Amendment as incorporated by the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . . Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims."); *Cugini v. City of New York*, 941 F.3d 604, 608 (2d Cir. 2019) ("Under *Graham* . . ., we review a plaintiff's excessive force claim under the Fourth

Second, with respect to the claims of "deliberate indifference/supervisory liability" regarding Anderson's "failure to supervise Canario, Pitt, Saintiche, and Arestin in conducting [the] strip search," (PSAC VI ¶ 124), the Amended Compliant likewise alleged the relevant conduct. For example, the Amended Complaint alleges that "Supervisor Sergeant Anderson advised his fellow officers to conduct a strip search," (Am. Compl. II.D ¶ 2), and that Anderson "advis[ed] [four] police officers to perform a search and st[ood] by or fail[ed] to intervene while fellow officers visually and manually inspected my body cavity," (Am. Compl. II.D ¶ 5). Accordingly, Police Defendants' assertion that Plaintiff's claim against Anderson is "entirely new," (Defs.' Mem. 5), reflects a basic mischaracterization of the record.

Third, contrary to Police Defendants' assertions, Plaintiff's Amended Complaint also included claims of a "conspiracy between officers and co-defendant medical defendants." (*Id.*) For example, the Amended Complaint alleged that "Lemos was told by the police officers to search my body cavity" and that the officers held him while she so searched him. (Am. Compl. II.D ¶ 4.) The Amended Complaint further alleged that "the police officers and nurses['] general agreement to violate [Plaintiff's] constitutional rights and working together to conceal their illegal activities from authorities amounted to a civil rights conspiracy claim under [§] 1983." (*Id.*) Accordingly, Police Defendants' assertion that Plaintiff's conspiracy claim is somehow novel is without merit.

---

Amendment . . ."); *Brown v. Rose*, No. 16-CV-00229, 2018 WL 3637474, at *5 (D. Conn. July 31, 2018) (explaining that courts decline "to analyze [a] plaintiff's overlapping Fourth and Fourteenth Amendment claims under a generalized notion of substantive due process when the Fourth Amendment provides an explicit textual source of constitutional protection") (citation and quotation marks omitted); *see also Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019) (analyzing body cavity searches incident to an arrest under the Fourth Amendment).

By contrast, Police Defendants' arguments concerning Plaintiff's First Amendment retaliation and malicious prosecution are persuasive because the Amended Complaint cannot be fairly read as having already raised such claims. In the PSAC, Plaintiff alleges that Police Defendants "falsified incriminating statements" and took various related actions in retaliation for Plaintiff's "exercising his right to remain silent." (PSAC VI ¶ 126.)[2] Plaintiff's Amended Complaint, by contrast, did not so much as mention "retaliation," or suggest a retaliatory motive (or any facts suggesting a retaliatory motive) for Police Defendants' conduct. (*See generally* Am. Compl.) Similarly, while the PSAC advances malicious prosecution claims against Canario and Pitt based on their falsification of "incriminating statements to obtain, secure and execute [a] search warrant," provision of "statements to [the] prosecution," and "falsely charging/filing felony and misdemeanor complaint," (PSAC VI ¶ 128), no such claims appeared in the Amended Complaint. Indeed, the Amended Complaint did not mention "malicious prosecution" or even allege that charges were filed. (*See generally* Amended Complaint.) Such an allegation is an essential element of a malicious prosecution claim. *See Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (explaining that a § 1983 claim for malicious prosecution

---

[2] While Plaintiff alleges that the retaliation arose, at least in part, from his attempt to exercise Fifth Amendment rights, Plaintiff asserts this claim under the First Amendment only. In any event, courts do not generally recognize independent Fifth Amendment retaliation claims. *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003) ("[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness."); *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) ("No cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations. Instead, the remedy for a failure to provide appropriate Miranda warnings is a suppression of the evidence that resulted from the violation." (citations and quotation marks omitted)); *Zuneska v. Cty. of Suffolk*, 338 F. Supp. 3d 102, 116 (E.D.N.Y. 2018) (explaining that "a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case" (citation and quotation marks omitted)); *see also Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (analyzing a plaintiff's claim that officers retaliated against him for remaining silent under the First, rather than the Fifth, Amendment).

requires that a plaintiff show a violation of his rights under the Fourth Amendment, as well as the elements of a malicious prosecution claim under state law, including "the initiation or continuation of a criminal proceeding against [the] plaintiff"). Accordingly, the Amended Complaint cannot be fairly read as having raised a malicious prosecution claim.

b. Leave to Amend by Adding These New Claims

Because Plaintiff's malicious prosecution and First Amendment retaliation claims are newly asserted and without prior permission of the Court, these claims must satisfy the standard analysis that governs motions to amend under Rule 15(a). (*See* Nov. 2018 Order 4–5.) In particular, the Court must consider "(i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." *Sandler*, 2017 WL 2226599, at *2; *see also Gorman v. Covidien Sales, LLC*, No. 13-CV-6486, 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (same). Here, the Court concludes that Plaintiff's pleadings cannot meet these standards. First, Plaintiff's malicious prosecution is clearly futile. In New York State, "termination of the proceeding in plaintiff's favor" is an essential element of a § 1983 claim for malicious prosecution. *Manganiello*, 612 F.3d at 161; *see also Bate v. City of New York*, No. 15-CV-2631, 2018 WL 4757940, at *23 (S.D.N.Y. Sept. 30, 2018) ("To prevail on a malicious prosecution claim under [§] 1983, a plaintiff must show . . . termination of the proceeding in plaintiff's favor . . ."). As Plaintiff acknowledges, however, "he has made no allegations with respect to whether or not he received a favorable termination" of the charges against him. (Pl.'s Reply Mem. 10.) This alone is determinative. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018) (affirming the dismissal of a § 1983 claim for malicious prosecution because the plaintiff failed to plausibly allege that the proceedings against him were terminated in a

manner indicating his innocence). Accordingly, as pursuing such claim would be futile, leave to amend with respect to this claim is denied. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (explaining that leave to amend a complaint may be denied when amendment would be futile); *Md. Ashik Islam v. Melisa*, No. 18-CV-2535, 2020 WL 1452463, at *13 (E.D.N.Y. Mar. 24, 2020) (denying leave to amend where doing so would be futile).

Similarly, the Court also denies leave to amend with respect to the proposed First Amendment retaliation claim. First, Plaintiff's PSAC was filed over 18 months after his Amended Complaint. Although "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend[,] . . . the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2020 WL 1659849, at *8 (S.D.N.Y. Apr. 3, 2020); *see also U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11-CV-8196, 2015 WL 1650767, at *5–*6 (S.D.N.Y. Apr. 10, 2015) (explaining that "[w]here the plaintiff seeks to amend the complaint after an inordinate delay it bears the burden to explain that delay," and denying leave to amend where a party "failed to provide a defensible explanation for waiting a full year to [] amend its complaint"). Here, discovery was already complete and Defendants were preparing to file motions for summary judgment when Plaintiff sought to file these new claims. Accordingly, permitting Plaintiff to add this wholly new claim would necessitate the reopening of discovery—a factor that constitutes prejudice. *See Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, No. 16-CV-10047, 2019 WL 1873156, at *4 (S.D.N.Y. Apr. 26, 2019) ("Plaintiff's proposed amendment would require the reopening of discovery . . . . The resulting expenditure and delay of the resolution of this matter would unduly prejudice defendants, and plaintiff has offered no compelling explanation for her

delay."), *reconsideration denied*, 2019 WL 2324568 (S.D.N.Y. May 30, 2019); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an amendment prejudicial if discovery has closed."). Moreover, Plaintiff offers no explanation for his delay in adding this new claim. (*See generally* Pl.'s Reply Mem.) Nor could he; Plaintiff's retaliation claim is hardly the product of "newly-discovery evidence," *Infomir LLC*, 2020 WL 1659849, at *10. On the contrary, this claim is based entirely on his own personal knowledge—knowledge he has possessed all along. (*See* PSAC V. ¶¶ 108–09, 115.) *See Abrams v. Waters*, No. 3:17-CV-1659, 2019 WL 6999959, at *2 (D. Conn. Dec. 21, 2019) (denying a motion to amend where the plaintiff "provide[d] no explanation why he could not have included these claims" in a prior motion to amend and where the plaintiff's asserted "new facts" were all "within his personal knowledge *before* discovery" (emphasis in original)).

Finally, the addition of Plaintiff's purported retaliation claim would be futile. Plaintiff's claim consists of a single conclusory sentence: "I was also retaliated against for exercising my right to remain silent when I was subjected to these abusive, brutal body cavity searches, falsely charged with a felony . . ., and falsely accused of making false statements." (PSAC V. ¶ 115.) In support of that claim, Plaintiff's only allegations are that several times over the course of his interrogation, he stated that he wished to "plead the Fifth," but that his requests were "ignored." (*Id.* ¶¶ 37, 39.) Notably, Plaintiff acknowledges that Defendants began their allegedly harsh conduct began well before Plaintiff asserted his desire to remain silent, (*see id.* ¶¶ 31–33), and Plaintiff has alleged no statements—or indeed any conduct at all—by Defendants suggesting that their decision to search him, accuse him of making false statements, or charge him with a felony was motivated by his speech (or decision not to speak). On the contrary, Plaintiff alleges only that his expressions of the desire to "plead the Fifth" were "ignored" or that Defendants

"continued to question" him." (*Id.* ¶¶ 37, 39.) Plaintiff's failure to allege *any* indicia of retaliatory motive or causation is fatal to the purported claim. *See Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("To plead a First Amendment retaliation claim a plaintiff must show . . . [that] the defendant[s'] actions were motivated or substantially caused by his exercise of that right . . ."); *Pen Am. Ctr., Inc. v. Trump*, No. 18-CV-9433, 2020 WL 1434573, at *9 (S.D.N.Y. Mar. 24, 2020) (same); *see also Lilly v. Town of Lewiston*, No. 1:18-CV-00002, 2020 WL 1482232, at *7 (W.D.N.Y. Mar. 27, 2020) (dismissing a First Amendment retaliation claim because the plaintiff failed to plausibly allege that the defendants' "actions were motivated or caused by [the p]laintiff's engagement in [a] protected activity"). Moreover, as the Supreme Court has recently clarified, where alleged retaliation comes in the form of an arrest or prosecution, the plaintiff bears the additional burden of pleading (and then proving) "the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). Here, any such pleading is completely absent from Plaintiff's PSAC; indeed, Plaintiff readily admits that Police Defendants received a message from their police dispatcher "fully describing [Plaintiff] as the suspect selling narcotics," that he ran from police, and that a plastic baggie was ultimately retrieved from his body. (PSAC V ¶¶ 20, 27, 86). Accordingly, because Plaintiff has not adequately pleaded that Defendants' actions were the product of retaliatory motive, nor the absence of probable cause, his purported First Amendment claim cannot be successful. *See McKeefry v. Town of Bedford*, No. 18-CV-10386, 2019 WL 6498312, at *10 (S.D.N.Y. Dec. 2, 2019) (dismissing First Amendment retaliation claim and noting, "not only does [the p]laintiff fail to plausibly allege the absence of probable cause, but her SAC shows the existence of probable cause"). Accordingly, leave to amend with respect to the addition of a First Amendment retaliation claim is denied due to unexcused delay, prejudice, and futility. *See*

*Nielsen*, 746 F.3d at 62 (explaining that leave to amend a complaint may be denied when amendment would be futile); *Md. Ashik Islam*, 2020 WL 1452463, at *13 (denying leave to amend where doing so would be futile); *Portelos v. City of New York*, No. 12-CV-3141, 2015 WL 5475494, at *3 (E.D.N.Y. Sept. 15, 2015) (denying leave to amend due to plaintiff's unexcused delay and the conclusion of discovery).

B. The Renewed Application or Pro Bono Counsel

1. Applicable Legal Principles

Although there is no constitutional right to counsel in civil cases, the Court has the authority to appoint counsel for indigent parties. *See* 28 U.S.C. § 1915(e)(1). "Broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). When assessing whether appointment of counsel is appropriate, the Court should undertake a two-step inquiry. *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003). First, the Court "should . . . determine whether the indigent's position seems likely to be of substance." *Id.* (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) ("This Court considers motions for appointment of counsel by asking first whether the claimant has met a threshold showing of some likelihood of merit." (internal quotation marks omitted)). In other words, the claim must not be so "highly dubious" that the litigant appears to have no chance of success. *Hodge*, 802 F.2d at 60 (internal quotation marks omitted). In making this determination, the Court construes pleadings drafted by pro se litigants liberally, and interprets them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Sommersett v. City of New York*, 679 F. Supp. 2d 468, 472 (S.D.N.Y. 2010).

If the threshold requirement is met, the Court should proceed to consider other prudential factors such as Plaintiff's

> ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented [to the fact finder], the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Ferrelli*, 323 F.3d at 203–04 (quoting *Hodge*, 802 F.2d at 61–62); *see also Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011) (listing *Hodge* factors).

For the purposes of the instant Application, the Court assumes that Plaintiff's claims have "some likelihood of merit" and can satisfy the threshold requirement under *Hodge*. *Johnston*, 606 F.3d at 41 (internal quotation marks omitted). Moreover, the Court notes that Plaintiff has affirmed that he has contacted numerous potential attorneys to take his case, but that all such requests were "either rejected or ignored." (Pl.'s Decl. ¶ 8.) Accordingly, for the purposes of the instant Application, the Court assumes that Plaintiff had adequately demonstrated that he is "unable to obtain counsel." *Hodge*, 802 F.2d at 61.

With respect to the second inquiry, regarding prudential factors, however, the Court finds that Plaintiff has not demonstrated why he needs counsel. Here, Plaintiff alleges that he "has a lack of education and experience in the studies of existing local, state and federal laws and rules." (Pl.'s Decl. ¶ 1.) However, a "lack of legal knowledge, without more, does not provide sufficient basis to appoint counsel," *Tramun v. Ocasio*, No. 11-CV-6061, 2012 WL 1142452, at *1 (S.D.N.Y. Apr. 4, 2012); *see also West v. Brickman*, No. 07-CV-7260, 2008 WL 3303773, at *2 (S.D.N.Y. Aug. 6, 2008) (noting that a "lack of knowledge in civil law" does not justify a request for counsel (alteration omitted)). Indeed, Plaintiff has "not indicated . . . what additional facts . . . could be gathered and investigated only through the aid of counsel [which] might be

crucial to [Plaintiff's] ability to substantiate his claim[s]." *Guzman v. Jacobson*, No. 98-CV-2865, 1999 WL 199068, at *1 (S.D.N.Y. Apr. 9, 1999). Next, while Plaintiff suggests that his claims "present complex legal issues," (Pl.'s Decl. ¶ 4), the Court finds that Plaintiff's claims—which consist of straightforward claims relating to the use of force during a search and seizure of Plaintiff's person—"are not so complex or unique that a person of [Plaintiff's] intelligence would be unable to handle them at this stage," *Mena v. City of New York*, No. 12-CV-28, 2013 WL 1165554, at *2 (S.D.N.Y. Mar. 19, 2013); *see also Paulin v. Figlia*, 916 F. Supp. 2d 524, 537 (S.D.N.Y. 2013) (explaining that the plaintiff's Fourth and Fourteenth Amendment claims were not complex enough to require appointment of pro bono counsel); *O'Brien v. Barrows*, No. 10-CV-173, 2010 WL 5300812, at *3 (D. Vt. Dec. 22, 2010) (denying motion for appointment of counsel because "[t]he legal issue of excessive force is not particularly complex," and "it [was] not clear that the case [would] require any meaningful investigation"). Moreover, Plaintiff's claims are entirely based on events that happened in Plaintiff's presence, and "do not appear to require outside investigation," *Person v. Ercole*, No. 08-CV-7532, 2009 WL 855758, at *2 (S.D.N.Y. Mar. 26, 2009); *cf. Hendricks*, 114 F.3d at 394 (granting a plaintiff's motion for appointment of counsel in part due to the plaintiff's incarceration, which "severely limit[ed] his ability to investigate and present the crucial facts in what appear[ed] to be a fact-intensive case"). While Plaintiff may need to cross-examine witnesses should the case proceed to trial, "this factor, alone, is not sufficient to warrant appointing counsel." *Worthy v. City of N.Y. Parks & Recreation*, No. 10-CV-6368, 2011 WL 1044242, at *2 (S.D.N.Y. Feb. 28, 2011). In any event, the Court can again consider appointing counsel if and when this case does proceed to trial. Additionally, the Court notes that Plaintiff has demonstrated his ability to present the case himself through his submissions in this Action that adequately express his arguments and desired

forms of relief. *See Harrison v. N.Y.C. Admin. for Children's Servs.*, No. 02-CV-947, 2002 WL 2022871, at *1 (S.D.N.Y. Sept. 3, 2002) (noting that the plaintiff was "capable of presenting her own case" where, "[i]n submissions to the court, she . . . demonstrated an ability to make arguments and draft pleadings").

Accordingly, because Plaintiff has not established that appointment of counsel would be more likely to lead to a just determination in this case, the Court denies Plaintiff's renewed Application without prejudice.

III. Conclusion

For the reasons stated above, Plaintiff's Motion to Amend is granted in part and denied in part. The Court deems the PSAC (henceforth, the "SAC") the operative complaint; however, the Court denies Plaintiff leave to proceed with his claims for retaliation and malicious prosecution (his ninth and eleventh causes of action).

As Plaintiff's Motion to Amend has now been resolved, the briefing schedule for Defendants' anticipated Motions for Summary Judgment is no longer stayed. Defendants' Motions are due June 1, 2020. Plaintiff's Response is due July 1, 2020. Defendants' Reply is due July 22, 2020.

Plaintiff's renewed Application for the appointment of pro bono counsel is denied without prejudice. If circumstances change materially, Plaintiff may renew his request.

The Clerk of Court is directed to mail a copy of this Order to Plaintiff.

SO ORDERED.
Dated: May 1, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE