UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RAIQUAN FALLS,

                          Plaintiff,                     **DECISION AND ORDER**

        -against-                       16 Civ. 8863 (AEK)

DETECTIVE MICHAEL PITT, POLICE OFFICER
CARLOS CANARIO, POLICE OFFICER ANDRES
ARESTIN, POLICE OFFICER JONATHAN
SAINTICHE, POLICE OFFICER JOHN PEREZ,
POLICE OFFICER CARLOS MENDEZ, SERGEANT
WILLIAM ANDERSON, and NURSE PRACTITIONER
HILLARY DURBIN-FRENCH,

                          Defendants.
------------------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Currently before the Court is Plaintiff's motion for reconsideration of the portion of the

March 26, 2021 Opinion & Order issued by the Honorable Kenneth M. Karas, *see* ECF No. 216

("SJ Op."), that granted summary judgment to Defendants Pitt and Canario on Plaintiff's claim

of an unreasonable search (Count 15), *see* ECF No. 326 (Plaintiff's motion).[1]  In his

memorandum of law in support of the motion, Plaintiff "requests that the Court reconsider its

ruling that granted qualified immunity to defendants Carlos Canario and Michael Pitt relating to

their fabrication of statements that Mr. Falls allegedly told Canario 'that he was secreting more

drugs inside his body,'" adding that the alleged fabrication "led to the issuance of the search

warrant by a state court judge authorizing the manual body cavity search . . . ultimately

performed by defendant Hillary Durbin-French at St. Luke's Hospital[.]"  ECF No. 328 ("Pl.'s

---

[1] In January 2025, the parties consented to proceed before the undersigned for all
purposes pursuant to 28 U.S.C. § 636(c).  *See* ECF Nos. 320, 321.  Accordingly, references to
"the Court" in this Decision and Order may refer to either Judge Karas or to the undersigned.

Mem.") at 1.  The "Police Defendants" (Detective Michael Pitt, Police Officer Carlos Canario, Police Officer Andres Arestin, Police Officer Jonathan Saintiche, Police Officer John Perez, Police Officer Carlos Mendez, and Sergeant William Anderson) oppose the motion.  ECF No. 337.

## I.    Legal Standard

Plaintiff seeks reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  Rule 54(b) states that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  "However, the interests of finality serve to severely restrict the circumstances in which courts may revise judgments that adjudicate a claim or determine the rights and liabilities of the parties." *Dill v. JPMorgan Chase Bank, N.A.*, No. 19-cv-10947 (KPF), 2021 WL 3406192, at *10 (S.D.N.Y. Aug. 4, 2021) (cleaned up).[2] "In this Circuit, decisions under Rule 54(b) are treated as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (cleaned up).  "According to this doctrine, a district court may reconsider prior adjudications where to do so would not be inconsistent with the objectives of efficiency and finality." *Id.* at *11 (quotation marks omitted).

"Under the law of the case doctrine, when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Id.* (cleaned up).  "That said, the law of the case

---

[2] A copy of this unpublished opinion is attached to this Decision and Order.

doctrine does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Id.* (quotation marks omitted). "Even so, courts generally will not depart from an interlocutory decision pursuant to Rule 54(b) unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quotation marks omitted). "Nor is Rule 54(b) a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (cleaned up).

## II.    Application

In its decision on the parties' motions for summary judgment, the Court found that the Police Defendants were entitled to qualified immunity as to Plaintiff's claims against them in Count 15 of the Second Amended Complaint based upon their good faith reliance on the issuance of the search warrant during the evening of May 8, 2015. SJ Op. at 89-111. The Court rejected Plaintiff's challenge to the Police Defendants' good faith reliance on the warrant in part on the ground that Plaintiff did not provide a sufficient offer of proof, beyond his own conclusory allegation, that the judge who issued the warrant had been knowingly and materially misled by Defendant Pitt (the officer who drafted the search warrant affidavit) as required by *Franks v. Delaware*, 438 U.S. 154 (1978), and *Velardi v. Walsh*, 40 F.3d 569 (2d Cir. 1994). *See* SJ Op. at 102-03.[3]

In his motion for reconsideration, Plaintiff asserts that "the Court overlooked two critical facts in reaching its conclusion": (1) "[b]ecause the allegedly fabricated evidence were

---

[3] The Court also rejected Plaintiff's argument that the good faith exception did not apply because the warrant application was so lacking in indicia of probable cause as to render reliance upon it unreasonable. *See* SJ Op. at 103-11. Plaintiff does not seek reconsideration of that aspect of the summary judgment decision.

statements the defendants attributed to Mr. Falls, the only way Mr. Falls could rebut the statement 'that he was secreting more drugs inside his body' was through his denial, particularly since Canario did not claim that anyone else was present when Mr. Falls allegedly made this statement"; and (2) Plaintiff presented "independent evidence" that "corroborated his claim of fabrication," namely, evidence that neither the manual body cavity search nor the subsequent x-ray examination conducted pursuant to the warrant revealed any evidence of drugs inside Plaintiff's body.  *See* Pl.'s Mem. at 4-5.

Simply put, the Court did not overlook either of these "facts."  As to the first point, Plaintiff suggests that his own denial of having made the disputed statement should be a sufficient offer of proof to preclude summary judgment as to this claim given the particular facts and circumstances of this case.  But tellingly, Plaintiff does not contend that there has been any change in the law relied upon by the Court—which "ma[kes] clear that a plaintiff's own, uncorroborated statements do not constitute a sufficient offer of proof under *Franks*," SJ Op. at 101 (collecting cases)—nor does he point to any cases that have reached contrary conclusions. As to the second purportedly overlooked fact, there is no question that Court was well aware that no drugs were found pursuant to the manual body cavity search and subsequent x-ray performed at the hospital.  Even though this was not specifically discussed in the Court's analysis of the Police Defendants' good faith reliance on the warrant, it was noted in multiple other places in the March 26, 2021 Opinion & Order, *see* SJ Op. at 13, 14, 92, and therefore does not constitute the type of "new evidence" that would warrant reconsideration of this portion of the decision pursuant to Rule 54(b).

In sum, Plaintiff has not provided "cogent and compelling reasons" for the Court to revise its prior ruling, and his motion for reconsideration (ECF No. 326) is DENIED.

4

\*       \*       \*       \*       \*       \*

According to the New York State Department of Corrections and Community Supervision website, Plaintiff is currently housed at Attica Correctional Facility.  *See Incarcerated Lookup*, Department of Corrections and Community Supervision (Raiquan Falls, DIN 24B0587) (last visited 1/8/2026) [https://perma.cc/AD6G-KFJX].  The Clerk of Court is therefore respectfully directed to update the docket to list Plaintiff's address as follows:

> Raiquan K. Falls
> DIN No. 24B0587
> Attica Correctional Facility
> 639 Exchange Street
> Attica, NY  14011-0149

The Clerk of Court is further respectfully directed to mark the motion at ECF No. 326 as DENIED, and to mail a copy of this Decision and Order to the *pro se* Plaintiff at his updated address.

Dated:  January 8, 2026
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge

5

2021 WL 3406192
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Harold R. DILL and Edward M. Appleby, Plaintiffs,
v.
JPMORGAN CHASE BANK, N.A., Defendant.

19 Civ. 10947 (KPF)
|
Signed 08/04/2021

**Attorneys and Law Firms**

David S. Golub, Ian Wise Sloss, Steven Lawrence Bloch, Silver Golub & Teitell LLP, Stamford, CT, Leron Thumim, Warshaw Burstein, LLP, Michael S. Devorkin, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, for Plaintiffs.

Eamon Paul Joyce, Sidley Austin LLP, Kierstin S. Fowler, McDermott Will & Emery LLP, New York, NY, David S. Kanter, Washington, DC, for Defendant.

### OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

**\*1** On July 29, 2020, this Court issued an Opinion and Order (the "July 29 Order") granting Defendant JPMorgan Chase Bank, N.A.'s motion to compel arbitration of the claims of Plaintiffs Harold R. Dill and Edward M. Appleby and staying this action as to those Plaintiffs pending the outcome of arbitration. The Court's decision to stay the action, implemented in accordance with Second Circuit precedent, effectively prevented the parties from appealing the July 29 Order. Plaintiffs now move, pursuant to 28 U.S.C. § 1292(b), for certification of an interlocutory appeal of the July 29 Order. They separately move to vacate the July 29 Order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, citing the Second Circuit's recent decision in *Cooper* v. *Ruane Cunnif & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021) ("*Ruane*"). For the reasons set forth in the remainder of this Opinion, the Court denies both of Plaintiffs' motions.

### BACKGROUND [1]

[1] The Court assumes familiarity with the facts of this case as set forth in the July 29 Order. (Dkt. #56). For ease of reference, the Court refers to Plaintiffs' opening brief in support of their motion to certify the July 29 Order for interlocutory appeal as "Pl. Cert. Br." (Dkt. #59); Defendant's opposition brief as "Def. Cert. Opp." (Dkt. #67); and Plaintiffs' reply brief as "Pl. Cert. Reply" (Dkt. #70). The Court refers to Plaintiffs' opening brief in support of their motion to vacate the July 29 Order as "Pl. Vac. Br." (Dkt. #92); Defendant's opposition brief as "Def. Vac. Opp." (Dkt. #94); and Plaintiffs' reply brief as "Pl. Vac. Reply" (Dkt. #95).

### A. The Underlying Litigation

On November 26, 2019, Plaintiffs Harold R. Dill and Edward M. Appleby commenced this action with the filing of their initial Complaint. (Dkt. #1). Plaintiffs asserted claims against Defendant JPMorgan Chase Bank, N.A. for conversion, negligence, negligence *per se*, and unjust enrichment on behalf of themselves and various putative classes of plaintiffs. (*See id.*). In broad summary, Plaintiffs alleged that: (i) they had purchased cashier's checks from Defendant (the "Checks"), using funds from their accounts with Defendant; (ii) the Checks eventually became abandoned property subject to applicable state and federal laws of escheatment; and (iii) Defendant failed to follow the applicable escheatment laws and to provide Plaintiffs with proper notice that the Checks had been deemed abandoned. (*See id.*).

On January 31, 2020, Defendant filed a motion to compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and to stay this case pending the outcome of that arbitration. (Dkt. #18). In particular, Defendant argued that Plaintiffs' claims were governed by the arbitration provision of Defendant's Account Rules & Regulations (the "Deposit Account Agreement," or "DAA"). (*See id.*). Plaintiffs opposed the motion on April 27, 2020, arguing that the parties' dispute fell outside the scope of the DAA's arbitration provision. (Dkt. #35). The motion became fully briefed and ripe for review when Defendant filed its reply brief on May 26, 2020. (Dkt. #37).

Case 7:16-cv-08863-AEK    Document 359    Filed 01/08/26    Page 7 of 18

Dill v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2021)

 **\*2**  On June 26, 2020, prior to resolving Defendant's motion to compel arbitration, the Court granted Plaintiffs' motion to add Kari Garber as a party plaintiff and Defendant's cross-motion for an extension of time to file its responsive pleading. (Dkt. #54). Plaintiffs' Amended Complaint was filed on July 6, 2020. (Dkt. #55).

**B. The July 29 Order**
The July 29 Order granted Defendant's motion to compel arbitration of Plaintiffs' claims and stayed the action pending resolution of the arbitration. *Dill* v. *JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947 (KPF), 2020 WL 4345755 (S.D.N.Y. July 29, 2020). On the threshold issue of arbitrability, the Court found that the DAA's arbitration provision was "indisputably broad" and created a strong presumption of arbitrability. *Id.* at \*5-6. The Court then turned to Plaintiffs' allegations in the instant suit and concluded that they fell within the scope of the DAA's arbitration provision. *Id.* at \*6-8.

In reaching this conclusion, the Court considered several decisions — both in-Circuit and out-of-Circuit — proffered by Plaintiffs in support of their arguments that the claims were not covered by the DAA's arbitration provision. *Dill*, 2020 WL 4345755, at \*7-8. *First*, the Court addressed Plaintiffs' argument that their claims arose from "Defendant's failure to abide by its obligations under various escheatment laws," rather than "Defendant's conduct in relation to Plaintiffs' acquisition of the Checks." *Id.* at \*7. The Court found this to be a distinction without a difference, as the DAA arbitration provision did not limit itself to "claims challenging the lawfulness of cashier's check transactions," but instead covered "any dispute relating in any way" to Plaintiffs' accounts or transactions. *Id.* (citation omitted). *Second*, the Court reviewed four cases relied upon by Plaintiffs in support of the argument that the Court should consider whether the dispute at issue was "foreseeable" at the time of contracting. *Id.* at \*7-8. The Court determined that only one of these cases was from this Circuit and could thus "stand as binding authority"; even as to that case, the Court found that it neither stood for the proposition that "a claim must have been foreseeable at the time of forming the arbitration agreement" nor was factually applicable to the agreement and claims at issue in this matter. *Id.*

The Court proceeded to stay the action as to Plaintiffs Dill and Appleby pending arbitration, and directed Defendant to respond to Kari Garber's claims. *Dill*, 2020 WL 4345755, at \*9; *see generally Dylan 140 LLC* v. *Figueroa as Tr. of Bldg.*

*Serv. 32BJ Health Fund*, 982 F.3d 851, 859 (2d Cir. 2020) (observing that "we traditionally counsel that courts should stay litigation pending arbitration to avoid 'convert[ing] an otherwise-unappealable interlocutory stay order into an appealable final dismissal order' thus 'enabl[ing] parties to proceed to arbitration directly' " (quoting *Katz* v. *Cellco P'Ship*, 794 F.3d 341, 345, 346 (2d Cir. 2015) (alterations in *Dylan 140 LLC*)).

**C. Subsequent Motion Practice**
On September 1, 2020, Plaintiffs moved to certify the July 29 Order for interlocutory appeal. (Dkt. #58-59). The Court approved the parties' proposed briefing schedule (Dkt. #63), pursuant to which Defendant's opposition brief was filed on September 22, 2020 (Dkt. #67), and Plaintiffs' reply brief was filed on October 9, 2020 (Dkt. #70). Defendant subsequently filed a letter regarding cases brought by Plaintiffs' counsel in state courts in California and Illinois, in further opposition to Plaintiffs' motion, on January 8, 2021. (Dkt. #81). Plaintiffs responded to Defendant's letter on January 11, 2021 (Dkt. #84), and the Court issued a memorandum endorsement on January 14, 2021, indicating that it considered briefing on the issue to be closed (Dkt. #86). Accordingly, the motion for certification of the July 29 Order for interlocutory appeal is fully briefed and ripe for review.

 **\*3**  Separately, on September 15, 2020, Plaintiffs filed a Second Amended Complaint that added Laura Stanczyk as a party plaintiff. (Dkt. #64). Defendant subsequently filed a motion to dismiss the Second Amended Complaint on November 5, 2020. (Dkt. #73-76). On December 10, 2020, Kari Garber and Laura Stanczyk voluntarily dismissed their claims (Dkt. #80), and the Court subsequently denied Defendant's motion to dismiss as moot (Dkt. #87).

Shortly after issuance of the *Ruane* decision, on March 12, 2021, Plaintiffs moved to vacate the July 29 Order in light of the new decision. (Dkt. #91-92). Defendant filed an opposition brief on March 26, 2021 (Dkt. #94), and briefing was completed with the submission of Plaintiffs' reply brief on April 2, 2021 (Dkt. #95).

**DISCUSSION**

**A. Plaintiffs' Motion to Certify the July 29 Order for Interlocutory Appeal**

 **1. Applicable Law**

Section 16(b) of the FAA provides generally that "an appeal may not be taken from an interlocutory order ... granting a stay of any action under section 3 of this title," 9 U.S.C. § 16(b)(1), or "compelling arbitration under section 206 of this title," *id.* § 16(b)(3); *see Katz*, 794 F.3d at 346 ("[T]he FAA explicitly denies the right to an immediate appeal from an interlocutory order that compels arbitration or stays proceedings."). The Second Circuit has recognized that this provision "furthers [the FAA's] aim of eliminating barriers to arbitration by promoting appeals from orders barring arbitration and limiting appeals from orders directing arbitration." *Ermenegildo Zegna Corp.* v. *Zegna*, 133 F.3d 177, 180 (2d Cir. 1998) (internal quotation marks and brackets omitted).

Section 16(b) explicitly permits appellate review of orders that a district court certifies for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See* 9 U.S.C. § 16(b) ("Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order...."); 28 U.S.C. § 1292(b) (noting that, upon certification of an interlocutory appeal from the district court, the relevant Court of Appeals may, "*in its discretion*, permit an appeal to be taken from such order" (emphasis added)); *see generally Accenture LLP* v. *Spreng*, 647 F.3d 72, 74-75 (2d Cir. 2011) (concluding that the Second Circuit lacked jurisdiction to review an order refusing to enjoin arbitration that the district court had not certified for immediate interlocutory review). Under Section 1292(b), a district court may certify an order for interlocutory appeal when it is "of the opinion that such order [i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Casey* v. *Long Island R.R. Co.*, 406 F.3d 142, 145-46 (2d Cir. 2005).[2] The Second Circuit has warned, however, that Section 1292(b) must be strictly construed, because "the power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law." *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (internal quotation marks and brackets omitted). The movant bears the burden of demonstrating that all three of the substantive criteria are met. *See Casey*, 406 F.3d at 146 ("[Section 1292(b)], by its terms, thus imposes both procedural and substantive requirements on a would-be appellant.").

[2]     Federal Rule of Appellate Procedure 5(a)(3) provides the avenue by which a district court may amend its order to grant a party permission to petition for an interlocutory appeal:

> If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion to include the required permission or statement.

Fed. R. App. P. 5(a)(3).

**\*4** "It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler* v. *Bank of Berm. LTD*, 101 F.3d 863, 865 (2d Cir. 1996). In that regard, "federal practice strongly disfavors discretionary interlocutory appeals [as they] prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *SEC* v. *Straub*, No. 11 Civ. 9645 (RJS), 2013 WL 4399042, at \*2 (S.D.N.Y. Aug. 5, 2013) (alteration in *Straub*) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007)); *see also Glatt* v. *Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at \*1 (S.D.N.Y. Sept. 17, 2013) ("Interlocutory appeals are strongly disfavored in federal practice." (internal quotation marks and citation omitted)). The Second Circuit has further emphasized that Section 1292(b) certification should be "strictly limited because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.' " *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (alteration in *Flor*) (quoting *Klinghoffer*, 921 F.2d at 25). "[E]ven where the three legislative criteria of Section [ ] 1292(b) appear to be met, district courts retain unfettered discretion to deny certification if other factors counsel against it." *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (citation and internal quotation marks omitted); *accord Commerzbank AG* v. *U.S. Bank Nat'l Ass'n*, No. 16 Civ. 4569 (WHP), 2021 WL 603045, at \*6 (S.D.N.Y. Feb. 16, 2021).

**2. Application**

Plaintiffs seek to appeal the Court's ruling on the arbitrability of their claims. As discussed further below, Plaintiffs have not demonstrated that the July 29 Order meets the statutory requirements for certification for interlocutory appeal.[3]

Case 7:16-cv-08863-AEK    Document 359    Filed 01/08/26    Page 9 of 18

Dill v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2021)

3 In addition to arguing that Plaintiffs have not met the requirements of Section 1292(b), Defendant maintains that Plaintiffs' delay in pursuing interlocutory appeal provides a separate basis for denial of their motion. (Def. Cert. Opp. 21 n.5). In support, Defendant refers the Court to cases in which the parties' delays ranged between two months to nine-and-a-half months. (*Id.* (citing *Acumen re Mgmt. Corp.* v. *Gen. Sec. Nat'l Ins. Co.*, No. 09 Civ. 1796 (GBD), 2016 WL 950955, at \*4 (S.D.N.Y. Mar. 7, 2016) (nine-and-a-half months); *Lidle* v. *Cirrus Design Corp.*, No. 08 Civ. 1253 (BSJ), 2010 WL 4345733, at \*2 (S.D.N.Y. Oct. 29, 2010) (two months); *Kaye* v. *Amicus Mediation & Arb. Group, Inc.*, No. 3:13 Civ. 347 (JCH), 2014 WL 12755000, at \*1 (D. Conn. Oct. 29, 2014) (five months))). In contrast, Plaintiffs moved for certification 34 days after the Court's issuance of its July 29 Order. Particularly given that "Rule 5(a) of the Federal Rules of Appellate Procedure does not specify a time limit for seeking certification under section 1292(b)," *Kaye*, 2014 WL 1275500, at \*1, the Court declines to deny Plaintiffs' motion merely on the basis of untimeliness and will consider the merits of Plaintiffs' arguments. *Cf. Lidle*, 2010 WL 4345733, at \*2 (declining to treat two-month delay as "dispositive" and instead treating it "as one of several factors weighing against certification" (citation omitted)).

### a. The July 29 Order Did Not Involve a Controlling Question of Law

As noted above, the Court may only certify the July 29 Order for interlocutory appeal if the Order "involves a controlling question of law." 28 U.S.C. § 1292(b). "[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. When making this determination, a district court must also consider whether "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Dev. Specialists, Inc.* v. *Akin Gump Strauss Hauer & Feld LLP*, No. 11 Civ. 5994 (CM), 2012 WL 2952929, at \*4 (S.D.N.Y. July 18, 2012) (quoting *Peters* v. *Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at \*14 (S.D.N.Y. Mar. 19, 2012)). Moreover, "the question of law certified on

interlocutory appeal 'must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.' " *In re A2P SMS Antitrust Litig.*, No. 12 Civ. 2656 (AJN), 2015 WL 876456, at \*4 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks omitted) (quoting *Capitol Records, LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)), *leave to appeal withdrawn*, No. 15-768, Dkt. #16 (2d Cir. Apr. 3, 2015).

**\*5** Plaintiffs argue that the Court's decision on the arbitrability of their claims would have "a significant effect on the conduct of [this] action." (Pl. Cert. Br. 7). They express concern that should either of them appeal an unfavorable arbitration decision to this Court, and then the Second Circuit, "all" prior arbitration awards would be at risk of being vacated in the event the Second Circuit reaches a different conclusion on the issue of arbitrability. (*Id.* at 7-8). As the parties are well aware, this Court has previously found that the potential for reversal of an order granting a motion to compel arbitration does not raise a "controlling question of law," and it again reaches that conclusion here for substantially the same reasons. *See Murray* v. *UBS Secs., LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 1316472, at \*4 (S.D.N.Y. Apr. 1, 2014). In *Murray*, the Court recognized that reversal of its decision "could affect the 'conduct' of the action by eliminating the arbitration," but it nonetheless determined that "such a consequence is not sufficient to warrant certification." *Id.* (collecting cases).

Plaintiffs' discussion of a later decision from a sister court in this District, *In re A2P SMS Antitrust Litigation*, 2015 WL 876456, does not compel a different finding. (*See* Pl. Cert. Br. 7-8). In that decision, the district court was asked to certify for appeal its ruling that whether claims could be brought as a class or on an individual basis was an issue for the arbitrator to resolve. *See* 2015 WL 876456, at \*1. The court itself observed that "unlike *Murray* and the cases cited therein, the issue presented for certification does not address the availability of arbitration, and, at this stage, neither party is seeking to avoid arbitration." *Id.* at \*6. Rather, the question at issue "[was] what form that arbitration will take and, more immediately, who must make that determination." *Id.* Given that the resolution of this question would have "materially affect[ed] the course of the remainder of the litigation," the district court in *A2P* deemed the controlling question of law factor to be satisfied, albeit "certainly a close call." *Id.* at \*5. Here, there is no such close call, as the question at issue is more akin to that confronted by the Court in *Murray*: As in *Murray*, the July 29 Order addresses the availability of

arbitration, rather than what form the arbitration will take, and reversal of the order "would not terminate the action, but rather would return the action to this Court." 2014 WL 1316472, at *4.

Plaintiffs raise the related concern that should they not seek to appeal the arbitration decision, other similarly-situated putative plaintiffs will be deprived of the opportunity to participate in the class action. (Pl. Cert. Br. 8). In support, they cite to a decision from the Northern District of California, in which the trial court found that its order compelling arbitration raised a controlling question of law, because enforcement of the arbitration agreement "bar[red] Plaintiffs from proceeding with the class action that they sought in their complaint." *See Lee* v. *Postmates Inc.*, No. 18 Civ. 3421 (JCS), 2019 WL 1864442, at *3 (N.D. Cal. Apr. 25, 2019); *see also id.* ("If Plaintiffs were required to proceed without an appeal and prevailed in their individual arbitrations, whatever rights absent class members might have to a judicial resolution of their claims — if this Court's interpretation of the FAA is incorrect — might never be vindicated."). *Lee* is not binding precedent, and indeed is far from instructive in this case, given that the Second Circuit has had little difficulty finding individual plaintiffs to be barred from proceeding with class actions in analogous contexts. *See Martens* v. *Thomann*, 273 F.3d 159, 183 (2d Cir. 2001) (in class action, observing that "[i]f the district court had determined that the individual plaintiffs' claims were subject to valid and enforceable arbitration agreements and compelled arbitration, the individual plaintiffs could not have immediately appealed that decision"). Moreover, even in the class action context, "courts in this Circuit have denied motions for certification where reversals of the orders at issue would have allowed the [classes] to forgo arbitration entirely." *Murray*, 2014 WL 1316472, at *4 (citing *Levitt* v. *Lipper Holdings, LLC*, No. 03 Civ. 266 (RO), 2006 WL 944450, at *1 (S.D.N.Y. Apr. 12, 2006) (finding that plaintiffs pursuing securities fraud class actions failed to meet the criteria of Section 1292(b)); *Martens* v. *Smith Barney, Inc.*, 238 F. Supp. 2d 596, 601-02 (S.D.N.Y. 2002) (declining to certify for interlocutory appeal an order compelling arbitration of employment discrimination class action)). Given the weight of this in-Circuit precedent, the Court is unable to find that the July 29 Order's potential impact on putative class members provides a basis for certification. [4]

[4] In its opposition brief, Defendant argues that putative class members retained their ability to vindicate their rights in court, given that — at

that time — Garber and Stanczyk remained in the case, and were not subject to the DAA's arbitration provision. (Def. Cert. Opp. 10 & n.3). Since the motion was briefed, Garber and Stanczyk have voluntarily dismissed their claims without prejudice. (*See* Dkt. #80). Nonetheless, despite Garber's and Stanczyk's decision to dismiss their claims, other party plaintiffs may still join the case. And in any event, for the reasons discussed above, Plaintiffs' arguments regarding the putative class members' rights do not establish any controlling question of law.

> Relatedly, following the close of briefing, Defendant submitted a letter informing the Court that Plaintiffs' counsel represents a relator in at least two cases brought under the False Claims Act, 31 U.S.C. §§ 3729-3733, in California and Illinois. (Dkt. #81 (discussing *California ex rel. Elder* v. *J.P. Morgan Chase, N.A.*, No. CGC-19-579144 (Cal. Super. Ct.); *Illinois ex rel. Elder* v. *J.P. Morgan Chase Bank, N.A.*, No. 21 Civ. 85 (N.D. Ill.)). The Court understands that these cases arise from conduct similar to what has been alleged in this matter, and seek recovery of the same funds sought by Plaintiffs and putative class members. Defendant argues that the existence of these cases undercuts Plaintiffs' argument that judicial involvement is needed to protect the rights of putative class members. (*Id.* at 2). Plaintiffs respond, *inter alia*, that the False Claims Act cases relate to a subset of the conduct alleged in the instant case, and that those cases will not address the interests of proposed class members who reside in states other than California and Illinois. (Dkt. #84 at 2). While Plaintiffs' point is well-taken, the Court recognizes that at least some members of the putative class may possess alternate means of recovery in the courts, as well as in arbitrations.

**\*6** Plaintiffs' next argument fails for similar reasons. Plaintiffs argue that reversal of the July 29 Order would have a "precedential value for a large number of cases," as it would affect both their claims and those of similarly situated putative class members. (Pl. Cert. Br. 9 (quoting *Murray*, 2014 WL 1316472, at *3-4)). On this point, however, Plaintiffs fail to cite cases in which courts have considered the impact on putative class members in conducting this inquiry. And the Court's understanding is that in weighing the potential impact of certification, courts in this Circuit do not limit their

consideration to the consequences to putative class members in the cases before them. *See Green* v. *City of New York*, No. 05 Civ. 429 (DLI) (ETB), 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (observing that "defendants make no claim that reversal would have any precedential value" where "even if successful, they would only terminate the action with respect to one subclass in the litigation"). Instead, courts look to the potential impact of an appeal on other pending and future cases. *Cf. Islam* v. *Lyft, Inc.*, No. 20 Civ. 3004 (RA), 2021 WL 2651653, at *4-5 (S.D.N.Y. June 28, 2021) (noting that "if the Circuit decides to hear this appeal, it would provide valuable guidance to a great number of litigants and lower court judges" as the case presented "frequently litigated issues [that] have divided courts in recent years"); *Merryman* v. *Citigroup, Inc.*, No. 15 Civ. 9185 (CM), 2017 WL 129126, at *3 (S.D.N.Y. Jan. 6, 2017) (finding that decision deferring the question of whether an action could proceed as an individual or class action was unlikely to have "precedential value for a large number of cases" because it involved "[f]act-based determinations"). Moreover, courts in this District have indicated that precedential value is "not ... *per se* sufficient to meet the 'controlling issue of law' standard[,]" but merely "a factor the Court should consider in its analysis." *SEC* v. *Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (collecting cases); *see also Klinghoffer*, 921 F.2d at 24 ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court. But that is not the same as defining a 'controlling question of law' in terms of its precedential value."); *Murray,* 2014 WL 1316472, at *4 ("Even if [the Order will have precedential value over a large number of cases], under the assumption that because a large sector of the financial industry enters into the agreements at issue, more disputes like this are bound to be filed, this fact alone would not warrant certification."). [5]

[5] For similar reasons, the Court does not find determinative Plaintiffs' assertion that the Court's decision may have precedential value to customers at other banks with similar deposit account agreements. (*See* Pl. Cert. Reply 11).

In any event, the Court disagrees with Plaintiffs that the July 29 Order presents a "pure" question of law. Plaintiffs argue that review of the Court's decisions on arbitrability would not require the appellate court "to study any significant factual record" beyond the parties' briefing of the underlying motion to compel, and that certification of the July 29 Order is thus appropriate. (Pl. Cert. Br. 9). Defendant responds that

the Court's ruling turned on its contextual interpretation of the DAA, which does not present a pure question of law. (Def. Cert. Opp. 6-7). The Court agrees with Defendant that its July 29 Order does not present a pure question of law that a reviewing court could decide without studying the record. Rather, certification of the issue of arbitrability — and in particular, any requirement of contemporaneous foreseeability of the issues now in dispute — would require the Second Circuit to "address the interpretation and enforceability" of the arbitration provision, which would mandate "an examination of the entire arbitration agreement and potentially any evidence of the parties' intent." *See In re Anderson*, 550 B.R. 228, 237 (S.D.N.Y. 2016) (finding that "[s]uch an examination is not appropriate for certification under [Section] 1292(b)"). [6]

[6] Although Plaintiffs seek to rely on *In re A2P SMS Antitrust Litigation* (*see* Pl. Cert. Br. 9), that decision is again inapposite, as the question of "who decides — the court or the arbitrator — whether an arbitration agreement permits class arbitration" was "a question of law that [could] be decided quickly and cleanly without having to study the record." No. 12 Civ. 2656 (AJN), 2015 WL 876456, at *4 (S.D.N.Y. Mar. 2, 2015). As discussed above, Plaintiffs here seek to certify a far broader question that does require knowledge of the record.

In their reply brief, Plaintiffs put forth a broader (re)formulation of the question for which they seek interlocutory appeal. (*See* Pl. Cert. Reply 4 ("The question for appeal is the broader question ... of whether (and if so, how) courts should consider 'whether the dispute at issue was foreseeable at the time of contracting.' " (citation and internal quotation marks omitted))). However, it remains evident from Plaintiffs' briefing that they also intend to pursue on appeal the narrow issue of "the applicability of a foreseeability test to the DAA." (*Id.* at 6; *see also id.* at 7 ("Whether, and how, this Circuit should apply a foreseeability analysis ... to assess whether plaintiffs' claims ... are covered by the DAA is a pure question of law.")). This question of "the applicability of a foreseeability test to the DAA" necessarily requires knowledge of the underlying record. *See In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d at 536 ("Questions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under [Section] 1292(b)." (brackets and citations omitted)); *Merryman,* 2017 WL 129126, at

Case 7:16-cv-08863-AEK    Document 359    Filed 01/08/26    Page 12 of 18

Dill v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2021)

*3 ("Fact-based determinations rarely, if ever, will have precedential value for a large number of cases." (citations omitted)).

**\*7** In sum, Plaintiffs have not demonstrated that the July 29 Order raises either a controlling or a pure question of law. The Court need not address the other requirements of Section 1292(b), *see Straub*, 2013 WL 4399042, at \*2 ("These three criteria are 'conjunctive, not disjunctive,' and courts may only certify an interlocutory appeal where all three are satisfied." (citation omitted)), but does so in the interest of completeness.

### b. There Is Not Substantial Ground for Difference of Opinion Concerning the Arbitrability of Plaintiffs' Claims

Plaintiffs next fail to demonstrate that the July 29 Order presents "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). To do so, they must establish either that "[i] there is conflicting authority on the issue, or [ii] the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC*, 972 F. Supp. 2d at 551 (quoting *In re Enron Corp.*, No. 06 Civ. 7828 (SAS), 2007 WL 2780394, at \*1 (S.D.N.Y. Sept. 24, 2007)). The July 29 Order satisfies neither of these requirements.

Plaintiffs argue that this Court's treatment of the in-Circuit and out-of-Circuit caselaw discussed in their underlying briefing demonstrates either that there is "substantial ground for difference of opinion" on the issue of foreseeability or that the issue remains "one of first impression" in this Circuit. (Pl. Cert. Br. 10-12). In particular, Plaintiffs contend that a "fair reading" of the Second Circuit's decision in *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995), would require courts to consider the foreseeability of a claim in determining whether it falls within the scope of an arbitration clause. (*Id.* at 10-11). Conversely, Plaintiffs argue that to the extent the Court reads *Leadertex* differently, the issue of foreseeability remains undecided in this Circuit, further supporting certification of the July 29 Order. (*Id.*). The Court rejects these efforts by Plaintiffs to concoct a legal dispute worthy of interlocutory appeal.

In its July 29 Order, the Court found specifically that *Leadertex* does not "stand for the proposition that a claim must have been foreseeable at the time of forming the arbitration agreement," but rather "stands for the unremarkable proposition that '[a]s with any contractual matter,' a court's primary obligation in determining the scope of an arbitration provision is to 'enforce the parties' reasonable expectations.' " *Dill*, 2020 WL 4345755, at \*7 (alteration in *Dill*) (quoting *Leadertex*, 67 F.3d at 28-29). Moreover, the Court observed that even were it to "conflate the concepts of contracting expectations and foreseeability, *Leadertex* is still inapposite." *Id.* at \*8. While in *Leadertex*, "the plaintiff's defamation claims ... were so attenuated from the parties' contract to provide dyeing and warehousing services that the parties could not have reasonably expected for the arbitration clause in their contract ... to have covered such claims[,]" in the instant matter "there is no such attenuation between the claims at issue and the DAA." *Id.* (discussing *Leadertex*, 67 F.3d at 27-29). Thus, *Leadertex* does not create conflicting authority on the issues Plaintiffs seek to appeal because it does not speak to any foreseeability requirement, and even had it done so, it is nonetheless distinguishable from the instant matter on the facts. Additionally, were the Court to accept that *Leadertex* is in tension with the out-of-Circuit precedent proffered by Plaintiffs, "[t]he fact that there is some level of disagreement among the courts does not mean, however, that the standards of 1292(b) are necessarily satisfied." *Credit Bancorp, Ltd.*, 103 F. Supp. 2d at 227-28; *cf. In re NASDAQ Mkt. Makers Antitrust Litig.*, 938 F. Supp. 232, 253 (S.D.N.Y. 1996) ("[T]hose opinions [from other district courts] do not control in this Circuit and do not in themselves create 'substantial grounds' for a difference of opinion.").

**\*8** Similarly, even if the Second Circuit has not addressed the issue of foreseeability, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Murray*, 2014 WL 1316472, at \*6 (quoting *In re Flor*, 79 F.3d at 284); *see also Peters*, 2012 WL 946875, at \*14. The Court must instead "analyze the strength of the arguments in opposition to the challenged ruling" and decide "whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor,* 79 F.3d at 284 (emphasis in original) (citation omitted). Plaintiffs do not attempt to argue that the underlying issues are difficult, and the Court agrees that there is no basis for any such argument. Plaintiffs instead present the Court with "[m]ere conjecture that courts would disagree on the issue or that the [C]ourt was incorrect in its holding[.]" *In re Anderson*, 550 B.R. at 238. Such arguments are "not enough" to establish a substantial difference of opinion. *Id.*; *see also Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Americas*, 426 F. Supp. 2d 125,

129 (S.D.N.Y. 2005) ("A mere claim that a district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion."). Accordingly, the second requirement for certification is not met. *See Murray*, 2014 WL 1316472, at *7 ("Because the issues presented are not particularly difficult (if of first impression in this Circuit), and because Plaintiff has not pointed to a substantial split among district court rulings on this issue in this Circuit, the second requirement for certification is not met." (citing *Salim Oleochemicals, Inc.* v. *M/V Shropshire*, 177 F. Supp. 2d 159, 162 (S.D.N.Y. 2001))). [7]

[7]    As part of their efforts to cultivate substantial ground for difference of opinion, Plaintiffs briefly reference the Court's rejection of their argument that the parties' dispute falls outside the scope of the DAA's arbitration provision as it could have arisen even if Plaintiffs had not held deposit accounts with Defendant. (Pl. Cert. Br. 11-12). As this argument is the focus of their motion for vacatur of the July 29 Order, the Court will address it in further detail when it turns to that motion. But to preview, the Court does not find that any subsequent decisions by the Second Circuit on this issue are in tension with its July 29 Order, and thus do not militate in favor of a different finding on the second Section 1292(b) factor.

### c. An Immediate Appeal Will Not Materially Advance the Ultimate Termination of the Litigation

Lastly, the Court considers whether immediate appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." *Transp. Workers Union of Am., Local 100* v. *N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (internal quotation marks and citation omitted omitted); *see also Peters*, 2012 WL 946875, at *13.

In *Murray*, this Court found that certification of its order compelling arbitration might lead to unnecessary delays as: (i) "if the Second Circuit affirms the Court's decision, or rather yet, declines to hear Plaintiff's appeal, the result will be that this action will have been unnecessarily delayed by the interlocutory appeal," and (ii) "it is safe to assume that the appeal process will take longer than the arbitration, thereby extending the time in which a final decision on the merits is rendered." 2014 WL 1316472, at *7. Given both "the Court's confidence in its prior decision," and "the fact that certifying the issues for interlocutory appeal would only delay adjudication of the merits of this action in the arbitral forum," the Court did not there find that certification of its order would materially advance the termination of the action. *Id.* (collecting cases). The Court concludes similarly here.

Plaintiffs' arguments regarding the need for certainty as to class certification do not compel a different conclusion. (*See* Pl. Cert. Br. 12). [8] *First*, as previewed earlier, courts in this Circuit have declined to certify decisions compelling class arbitration. *See, e.g.*, *Levitt*, 2006 WL 944450, at *1 n.3 (denying motion for certification for immediate appeal of decision "send[ing] ... cases to arbitration and leav[ing] the question of whether putative class actions can be arbitrated under this arbitration clause, to the arbitrator" (quoting *Levitt* v. *Lipper Holdings, LLC*, No. 03 Civ. 266 (RO), 2003 WL 21523986, at *1 n.3 (S.D.N.Y. July 7, 2003))); *Smith Barney*, 238 F. Supp. 2d at 601-02.

[8]    Upon the dismissal of Garber's and Stanczyk's claims, Plaintiffs informed the Court that they were "withdraw[ing]" their argument "that appellate review of the Court's ruling will help establish whether the proposed Class is limited to individuals similarly-situated to Ms. Garber and Ms. Stanczyk and thus facilitate possible settlement of this action." (Dkt. #79). The Court thus does not address this argument in its consideration of Plaintiffs' motion.

**\*9** *Second*, Plaintiffs' arguments regarding the need to determine the scope of the class are premature at this point in the litigation, given that no class has yet been certified. *Cf. In re Zyprexa Prod. Liab. Litig.*, 493 F. Supp. 2d 571, 580 (E.D.N.Y. 2007) ("[A]n interlocutory appeal should await a decision on the critical question of class certification — an issue not yet considered by the court. When that question is decided by this court, the Court of Appeals can in its discretion decide the class certification issue[.]"). For this reason, Plaintiffs' reliance upon *In re Currency Conversion Fee Antitrust Litigation* is unavailing, as there the litigation had progressed to the class certification stage, and the court found that an immediate appeal would allow it "to obtain appellate guidance on the threshold issue of class composition." No. M 21-95 (WHP), 2005 WL 1871012, at *5 (S.D.N.Y. Aug. 9, 2005). [9]

Case 7:16-cv-08863-AEK    Document 359    Filed 01/08/26    Page 14 of 18

Dill v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2021)

9  Moreover, as Defendants note in their briefing (*see* Def. Cert. Opp. 19), the district court in *In re Currency Conversion Fee Antitrust Litigation* was also persuaded that immediate appeal would promote judicial economy in light of defendants' anticipated appeal of the court's prior denial of their motions to compel arbitration and stay the litigation. *See* No. M 21-95 (WHP), 2005 WL 1871012, at *5 (S.D.N.Y. Aug. 9, 2005).

Plaintiffs otherwise refer the Court to cases that have no precedential value (*see* Pl. Cert. Br. 14-15 (citing to cases from the Eastern District of Arkansas and the District of Colorado)), and to *In re A2P SMS*, which again has little bearing on today's decision (*see id.*). In *In re A2P SMS*, the district court observed that regardless of whether it certified its order for appeal, the Second Circuit would be required to address the "precise issue" of whether the plaintiffs' claims could be brought as a class or on an individual basis, "because both parties have made clear that, if they are the losing party in the ... proceeding currently underway in arbitration, they will seek to vacate the [Award] before this Court[,]" and "[t]he losing party of that determination will almost certainly appeal that decision to the Second Circuit[.]" 2015 WL 876456, at *5. The district court concluded that "until the question certified for interlocutory appeal is resolved[,]" "the arbitration will only proceed in fits and starts, with successive rounds of motions to vacate or confirm interim arbitration awards." *Id.* Here, there are no such concerns, as Plaintiffs have not raised any questions about the scope of their arbitrations, and the Court thus does not expect that the arbitrations will proceed in "fits and starts" absent certification of the July 29 Order. *Cf. Whyte* v. *WeWork Cos., Inc.*, No. 20 Civ. 1800 (CM), 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020) ("Plaintiff's warning that sending her to arbitration may result in her appealing from that tribunal's decision — thus prolonging the litigation — does not mean that interlocutory review of the June 11 Order, followed by a trial somewhere (because I cannot agree that my earlier order would be overturned), would be a more efficient way of proceeding." (internal citations omitted)).

*Finally*, as in *Murray*, the Court finds that allowing certification of the July 29 Order "would be inconsistent with the 'national policy favoring arbitration,' and the Second Circuit's distaste for delaying 'the arbitral process through appellate review.' " 2014 WL 1316472, at *8 (first citing *AT & T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 345 (2011), then citing *Salim Oleochemicals* v. *M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002), *abrogated on other grounds by Katz*, 794 F.3d 341); *cf. In re A2P SMS*, 2015 WL 876456, at *6 (concluding that "[p]ermitting interlocutory appeal ... [would] not undermine the federal policy favoring arbitration" where "the issue presented for certification does not address the availability of arbitration"). "This too, militates in favor of denying [Plaintiffs'] motion." *Murray*, 2014 WL 1316472, at *8; *see also Sacchi* v. *Verizon Online, LLC*, No. 14 Civ. 423 (RA), 2015 WL 1729796, at *4 (S.D.N.Y. Apr. 4, 2015).

**\*10**  In sum, as Plaintiffs have met none of the requirements of Section 1292(b), the Court declines to grant certification.

**B. Plaintiffs' Motion to Vacate the July 29 Order Under Fed. R. Civ. P. 54(b)** [10]

10  Plaintiffs' opening brief requests that the Court vacate the July 29 Order under either Rule 60(b) or Rule 54(b) of the Federal Rules of Civil Procedure. (*See* Pl. Vac. Br.). However, Defendant correctly observes in its opposition brief that Rule 60(b) only permits a court to "relieve a party ... from a *final* judgment, order, or proceeding." (Def. Vac. Opp. 7 (emphasis in Def. Vac. Opp.) (quoting Fed. R. Civ. P. 60(b))). "The standard test for whether a judgment is 'final' for Rule 60(b) purposes is whether the judgment is sufficiently 'final' to be appealed." *In re Shengdatech, Inc. Secs. Litig.*, No. 11 Civ. 1918 (LGS), 2015 WL 3422096, at *3 (S.D.N.Y. May 28, 2015) (alteration and citations omitted) (collecting cases). As perhaps is made evident by Plaintiffs' separate motion seeking to certify the July 29 Order for interlocutory appeal, the July 29 Order is not a "final" judgment for the purposes of Rule 60(b). *See Cohen* v. *UBS Fin. Servs., Inc.*, No. 12 Civ. 2147 (LGS), 2014 WL 240324, at *4 (S.D.N.Y. Jan. 22, 2014) (noting that Rule 60(b) was "inapplicable" to order granting motion to compel arbitration); *see also Usinor Steel Corp.* v. *M/V Koningsborg*, No. 03 Civ. 4301 (AKH), 2004 WL 230910, at *3 (S.D.N.Y. Feb. 6, 2004). Plaintiffs appear to concede as much in their reply brief, which discusses only Rule 54(b). (*See* Pl. Vac. Reply). Accordingly, the Court understands Plaintiffs to seek the Court's reconsideration of its July 29 Order under Rule 54(b).

**1. Applicable Law**

As noted, after the motion for certification was briefed, Plaintiffs moved for this Court to vacate its July 29 Order. Rule 54(b) provides that courts may revise "any order or other decision ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, "the interests of finality" serve to "severely restrict [the] circumstances" in which courts may revise judgments that "adjudicate a claim or determine the rights and liabilities of the parties." *Colvin* v. *Keen*, 900 F.3d 63, 71-72 (2d Cir. 2018) (explaining that a higher standard applies to reconsideration under Rule 54(b) of a decision that would be an "immediately appealable final judgment if no other claims remained to be adjudicated," than to reconsideration of a non-interlocutory decision); *see also Prestige Jewelry Int'l, Inc.* v. *BK Jewellery HK*, No. 11 Civ. 2930 (LAP), 2015 WL 8481873, at *1 (S.D.N.Y. Oct. 14, 2015) ("[T]he Court of Appeals has made clear that reconsideration of prior decisions should be the exception rather than the rule." (discussing *Off. Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("*Color Tile*"))).

In this Circuit, decisions under Rule 54(b) are

> treat[ed] ... as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."

 **\*11** *Color Tile*, 322 F.3d at 167 (quoting *Zdanok* v. *Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)); *accord Colvin*, 900 F.3d at 72. "According to this doctrine, a district court may reconsider prior adjudications where to do so would not be inconsistent with the objectives of efficiency and finality." *Vicuna* v. *O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017) (citing *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Tri-Star Pictures, Inc.* v. *Leisure Time Prod., B.V.*, No. 88 Civ. 9127 (DNE), 1992 WL 296314, at *2 (S.D.N.Y. Oct. 6, 1992)).

Under the law of the case doctrine, " 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.' " *Johnson* v. *Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States* v. *Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). That said, the law of the case doctrine does not

"rigidly bind a court to its former decisions, but is only addressed to its good sense." *Colvin*, 900 F.3d at 68 (quoting *Zdanok*, 327 F.2d at 952-53). Even so, courts generally will not depart from an interlocutory decision pursuant to Rule 54(b) unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Color Tile*, 322 F.3d at 167 (internal quotation marks and citation omitted); *accord Colvin*, 900 F.3d at 71-72. Nor is Rule 54(b) "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]' " *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

#### 2. Application

Plaintiffs argue that the Court should vacate the July 29 Order in light of the Second Circuit's decision in *Ruane*, 990 F.3d 173. (*See* Pl. Vac. Br.). In *Ruane*, the Second Circuit reversed a district court order compelling arbitration, concluding that the parties' dispute fell outside the scope of the relevant arbitration provision. 990 F.3d at 179. The *Ruane* plaintiff was pursuing an action under Section 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2), against the investment advisor for his employer's profit-sharing plan. *Id.* at 175-76. The district court concluded that the defendant could compel the plaintiff to arbitrate his ERISA fiduciary claims under his employment agreement's arbitration provision, pursuant to which he agreed to arbitrate "all legal claims arising out of or relating to employment." *Id.* at 178-79. The Second Circuit disagreed, and instead found that the plaintiff's claims did not "relate to" his employment. *Id.* at 184. Following an analysis of "the limits of the phrase 'relating to employment' in the context of an arbitration agreement," *id.* at 182-84, the Court held: "We therefore agree with the approach adopted by the Ninth Circuit ... that, in the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment[,]" *id.* at 184 (citing *United States ex rel. Welch* v. *My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 799 (9th Cir. 2017)).

 **\*12** Plaintiffs submit that *Ruane* requires this Court to reconsider its determination that the parties' dispute falls within the scope of the DAA's arbitration provision. (*See* Pl. Vac. Br.). To begin, Plaintiffs observe that certain out-of-Circuit cases discussed in their briefing — and considered by the Court in its July 29 Order — are referenced in the

*Ruane* decision. (*Id.* at 6-11). From this, they conclude that the Second Circuit takes a different view of "relatedness" than did this Court. (*Id.*). Defendant unsurprisingly offers a different interpretation of *Ruane*, and argues that the Second Circuit (i) considered an entirely distinguishable arbitration provision (Def. Vac. Opp. 9-11), and (ii) merely synthesized the law applied in the Court's July 29 Order (*id.* at 11-16). The Court finds that *Ruane* does not compel a different finding as to the scope of the DAA's arbitration provision.

*First*, the Court disagrees with Plaintiffs that the *Ruane* Court rejected the notion of "reliance on the presumption of [arbitrability] and the presence of a broad clause to compel arbitration[.]" (Pl. Vac. Br. 9). As the Court observed in its July 29 Order, the Second Circuit has held that "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Dill*, 2020 WL 4345755, at \*5 (quoting *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015)). In *Ruane*, the Second Circuit did not back away from this presumption. Rather, the Court there interpreted a completely different arbitration clause that (i) mandated arbitration of certain specified employment-related disputes, including "legal claims arising out of or relating to employment, application for employment, or termination of employment," and (ii) "specifically excluded" from arbitration "workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits provided under a Company sponsored benefit plan, and claims filed with the National Labor Relations Board." 990 F.3d at 178 (alterations omitted). The *Ruane* Court did not expressly apply the presumption of arbitrability to this narrower arbitration clause, and indeed, it was not obligated to do so. *See Ji Dong Cheng* v. *HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020) ("Thus, when '[t]he language of the clause itself is specific to disputes concerning [a definite subject matter], and is not a clause intended to cover all disputes that might arise between the parties,' it may properly be characterized as narrow." (alterations in *Ji Dong Cheng*) (quoting *Duafala* v. *Globecomm Sys. Inc.*, 91 F. Supp. 3d 330, 335 (E.D.N.Y. 2015))); *see also ACE Cap. Re Overseas Ltd.* v. *Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002) ("It is true that '[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.' But ... [w]ith [the] determination [that the arbitration clause is a broad one], 'there arises a presumption of arbitrability' and arbitration of even a

collateral matter will be ordered." (internal quotation marks and citations omitted) (quoting *Louis Dreyfus Negoce S.A.* v. *Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001))). And the Court approaches with healthy skepticism any reading of *Ruane* as parting with longstanding federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"). Indeed, in a summary order issued three days prior to *Ruane*, the Second Circuit reaffirmed the principle that "broad arbitration agreements 'create[ ] a presumption of arbitrability.' " *Harris* v. *TD Ameritrade, Inc.*, 837 F. App'x 841, 842 (2d Cir. 2021) (summary order) (alteration in *Harris*) (quoting *Holick*, 802 F.3d at 395); *cf. DDK Hotels, LLC* v. *Williams-Sonoma, Inc.*, — F.4th —, No. 20-2748-cv, 2021 WL 3118947, at \*6 (2d Cir. July 23, 2021) ("Where the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' Where, by contrast, the question is who should decide arbitrability, there is a presumption that the question should be resolved by the court."). The Court thus stands by its initial finding that the DAA's broad arbitration provision creates a presumption of arbitrability. [11]

11    As discussed in the Court's July 29 Order, the language of the DAA's arbitration provision is "indisputably broad." *Dill* v. *JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947 (KPF), 2020 WL 4345755, at \*6 (S.D.N.Y. July 29, 2020). The DAA provides that "any dispute relating in any way to your account or transactions will be resolved by binding arbitration"; that "ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION"; that "[c]laims and disputes ... about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration"; and that "[a]ny claims or disputes arising from or relating to this agreement ... are included." *Id.* Similar language has been construed as broad by the Second Circuit. *See id.* (collecting cases).

**\*13** *Second*, the *Ruane* Court's agreement with the Ninth Circuit's decision in *Welch*, and its discussion of other out-of-Circuit cases, do not change the Court's views on the

applicability of the DAA's arbitration provision to the instant dispute. In *Ruane*, the Court consulted the decisions of other circuits in considering how to interpret "the phrase 'relating to employment,' " as those decisions provided "helpful insight" in determining "the limitations ... implicit to the phrase 'relating to' in the context of an employment-based arbitration agreement." 990 F.3d at 182-84. The Court found the Ninth Circuit's decision in *Welch* particularly instructive, as in that matter the appellate court had considered an employee arbitration clause — similar to the clause in *Ruane* — that encompassed "any claims," and determined that the clause did not cover an employee's suit brought under the False Claims Act ("FCA"). 871 F.3d at 798-800. The *Welch* Court held that the plaintiff's FCA claims did not "arise out of" or "relate to" her employment for the purposes of the arbitration agreement, reasoning "that the subject matter of an FCA claim does not implicate any facts particular to the plaintiff's employment." *Ruane*, 990 F.3d at 183 (discussing *Welch*, 871 F.3d at 798-99).

The *Ruane* Court also considered decisions from the Fifth and Eleventh Circuits interpreting employment arbitration clauses with "relating to" language "in the context of suits seeking recovery for alleged sexual assault perpetrated by fellow employees in employer-provided residential quarters during off-duty hours." 990 F.3d at 183 (discussing *Doe* v. *Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208, 1218-20 (11th Cir. 2011); *Jones* v. *Halliburton Co.*, 583 F.3d 228, 230 (5th Cir. 2009)). The Court described the decisions thusly:

> The *Jones* and *Doe* courts both accepted that the sexual assault alleged in each case would not have occurred "but for" the plaintiff's employment with the defendant company, but determined nonetheless that the circumstances giving rise to the claim were outside the scope of her employment. "Relatedness" could not encompass everything that touched employment in any way, these courts posited.

*Id.* Following this discussion, the Second Circuit concluded that while the plaintiff's claims "were not perfectly analogous" to those brought in the out-of-Circuit decisions, the Court nonetheless "weigh[ed] heavily the consideration

that none of the facts relevant to the merits of [the plaintiff's] claims against [defendant] relates to his employment." *Id.* It also observed that non-employees could have brought identical claims against the defendant that would not have been subject to mandatory arbitration. *Id.* at 183-84.

The Court understands Plaintiffs to argue that following *Ruane*, claims will not be "related to" the subject matter of an arbitration agreement where a party would not have been in a position to pursue them "but for" the existence of the agreement. (Pl. Vac. Br. 10-11). In the first instance, the Court observes that *Ruane* addresses the interpretation of the phrase "relating to" in the context of an employment arbitration agreement, and consults out-of-Circuit precedent that interprets similar language in employment arbitration agreements. For this reason, the Court remains unconvinced that *Ruane* and the cases discussed therein establish a universal "test" pursuant to which arbitrability is determined by whether a third party could bring a similar claim. *See Dill*, 2020 WL 4345755, at *8 n.4 ("Insofar as any of the above three cases discusses the significance of a third party being able to bring similar claims, the Court reads that discussion as an analytical shorthand for establishing directness, as opposed to a clear test rooted in the holding of those cases"). Moreover, while the Second Circuit did find significant that a non-employee could bring the same claims brought by the *Ruane* plaintiff, this Court understands the decision — like the Fifth, Ninth, and Eleventh Circuit decisions it cited — to address "the specific issue of how directly related [the plaintiff's claims] were to the plaintiff's status as an employee." *Id.*; *see Ruane*, 990 F.3d at 183 ("[W]e weigh heavily the consideration that none of the facts relevant to the merits of [the plaintiff's] claims against [defendant] relates to his employment.").

**\*14**  In its July 29 Order, this Court conducted the appropriate inquiry into the nexus between Plaintiffs' claims and the DAA's arbitration provision, and determined that "Plaintiffs' claims clearly fall within the DAA's arbitration provision because they originate from Plaintiffs' purchases of cashier's checks using their respective accounts with Defendant." *Dill*, 2020 WL 4345755, at *7 n.3; *see also id.* at *7 ("[I]t is clear that, at minimum, [Plaintiffs' claims] touch matters covered by the DAA's arbitration provision[,]" as "Plaintiffs' claims are based on Defendant's alleged illegal handling of various cashier's checks that each individual purchased from Defendant, using funds from their respective accounts with Defendant."). Even were the Court to apply the approach taken by *Ruane* in the context of an employment

Case 7:16-cv-08863-AEK    Document 359    Filed 01/08/26    Page 18 of 18

arbitration agreement, it would find that "the merits of [Plaintiffs'] claims involve facts particular to" the subject matter covered by the DAA's arbitration provision. *See Ruane*, 990 F.3d at 184. [12]

[12]  Plaintiffs maintain that following *Ruane*, a relevant query is whether "the dispute in question ... was foreseeable at the time the parties entered their agreement." (Pl. Vac. Reply 7-8 (citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011))). But *Ruane* establishes no such foreseeability test, and the Court does not read *Ruane* as departing from other Second Circuit precedent consulted in its July 29 Order, namely, the decision in *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.,* 67 F.3d 20 (2d Cir. 1995).

In sum, Plaintiffs have not demonstrated any intervening change in controlling law, and the Court sees no basis for the vacatur of the July 29 Order. As such, Plaintiffs' motion for vacatur under Rule 54(b) is denied.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiffs' motions are DENIED. The Clerk of Court is directed to terminate the motions at docket entries 58 and 91. The stay imposed by this Court's July 29 Order remains in place pending further order of the Court. The parties are further ORDERED to update the Court on or before **November 5, 2021**, regarding the status of any arbitration.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3406192

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.