UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

RAIQUAN FALLS,

                        Plaintiff,

             -against-

DETECTIVE MICHAEL PITT, POLICE OFFICER
CARLOS CANARIO, POLICE OFFICER ANDRES
ARESTIN, POLICE OFFICER JONATHAN
SAINTICHE, POLICE OFFICER JOHN PEREZ,
POLICE OFFICER CARLOS MENDEZ, SERGEANT
WILLIAM ANDERSON, and NURSE PRACTITIONER
HILLARY DURBIN-FRENCH,

                        Defendants.

---------------------------------------------------------------------X

16 Civ. 8863 (AEK)

**DECISION AND ORDER**

**HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

A jury trial was conducted in this case from May 6-8, and May 11-14, 2026.  One of the

Defendants, Police Officer Carlos Mendez, did not appear at the trial to testify, despite both

Plaintiff and Defendants having identified Defendant Mendez as a trial witness in their respective

proposed pre-trial orders.  ECF No. 366 at 4; ECF No. 382 at 5.  During the trial, on May 11,

2026, Plaintiff filed a motion seeking entry of a default judgment against Defendant Mendez

based on his failure to appear.  ECF No. 407.  For the reasons that follow, the motion is

DENIED.

## BACKGROUND

The original complaint filed in this action was docketed on November 15, 2016.  *See*

ECF No. 2.  Defendant Mendez was not named as a Defendant in the original complaint.  *See id.*

Rather, he was added as a Defendant in the amended complaint that was docketed on February 7,

2017.  *See* ECF No. 22.  An answer to the amended complaint was filed on behalf of the "Police

Defendants," *i.e.*, Defendants Pitt, Canario, Arestin, Saintiche, Perez, Mendez, and Anderson, on

September 18, 2017.  *See* ECF No. 56.  The Court thereafter signed a case management and scheduling order, ECF No. 58, and the parties proceeded to engage in discovery, *see*, *e.g.*, ECF No. 83 (transcript of status conference held on January 19, 2018); ECF No. 86 (order extending discovery schedule).  In a letter dated June 21, 2018, counsel for the Police Defendants, including Defendant Mendez, informed the Court that discovery had been completed.  ECF No. 99.  The Court subsequently set a briefing schedule for anticipated summary judgment motions by the Police Defendants and the medical defendants, ECF Nos. 104, 108, though the summary judgment motion schedule was stayed to allow for briefing regarding Plaintiff's motion for leave to file a second amended complaint, *see* ECF No. 125.  The Police Defendants, including Defendant Mendez, opposed Plaintiff's motion.  *See* ECF Nos. 126-129.  The Court granted in part and denied in part Plaintiff's motion for leave to file a second amended complaint,[1] and in the same order set a new briefing schedule for motions for summary judgment from the Police Defendants and the medical defendants.  ECF No. 147.

The Police Defendants, including Defendant Mendez, filed their motion for summary judgment on July 1, 2020, ECF Nos. 159-172, and included with the summary judgment motion papers was an affidavit from Defendant Mendez, *see* ECF No. 163.  On March 26, 2021, the Court issued its Opinion and Order on the motions for summary judgment.  ECF No. 216.  Thereafter, the Court set a deadline of October 4, 2021 for Plaintiff to file a motion for the appointment of *pro bono* counsel, *see* ECF No. 229, which motion the Court later granted, *see* ECF No. 259.  On June 30, 2022, *pro bono* counsel appeared in the case to represent Plaintiff,

---

[1] After this order was issued, Plaintiff's filing at ECF No. 111 became the operative complaint in this matter.  At the final pretrial conference on April 24, 2026, the Court flagged for the parties that the Police Defendants had never answered the second amended complaint.  The Police Defendants—including Defendant Mendez—then filed their answer on April 27, 2026. *See* ECF No. 388.

ECF No. 260; *see also* ECF No. 283, and the Court authorized additional limited discovery, *see* Docket Sheet, Minute Entry dated 09/20/2022 ("Counsel are to jointly submit a letter to the court providing a plan to take limited depositions of the remaining defendants by October 4, 2022. Depositions to be completed by December 19, 2022."). The docket reflects that the parties submitted a letter to the Court with an agreed-upon schedule for Plaintiff's *pro bono* counsel to take ten depositions between December 13 and December 16, 2022; the letter did not specify which witnesses were scheduled to be deposed. ECF No. 272. There is nothing on the docket indicating that Plaintiff's *pro bono* counsel were unable to take any of the depositions that they wished to take.

In the ensuing years, including after the parties consented to proceed before the undersigned for all purposes on January 28, 2025, *see* ECF No. 321, and up until the Court granted *pro bono* counsel's motion to withdraw on April 10, 2025, *see* Docket Sheet, Minute Entry dated 04/10/2025; ECF No. 343, Plaintiff's counsel never notified the Court of any issues regarding their inability to take Defendant Mendez's deposition or otherwise obtain discovery from Defendant Mendez. It was not until the Court conducted the final pre-trial conference on April 24, 2026 that counsel for the Police Defendants reported that she did not know Defendant Mendez's whereabouts or whether he would appear at trial. But while Defendant Mendez ended up not appearing at trial, counsel for the Police Defendants nevertheless continued to represent him and his interests, and the Court, without objection, submitted to the jury the question of Defendant Mendez's liability with respect to the one cause of action asserted against him in the case—a claim for an unreasonable search incident to Plaintiff's arrest. Plaintiff asserted this claim against all of the Police Defendants, and the jury returned a verdict finding that none of the

Police Defendants, including Defendant Mendez, subjected Plaintiff to an unreasonable search incident to his arrest.  Court Ex. 1 (jury verdict form).

## LEGAL STANDARD

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quotation marks omitted).  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend:  first, the entry of a default, and second, the entry of a default judgment."  *Id.*  "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *Id.*  Pursuant to Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default."  *Mickalis Pawn Shop*, 645 F.3d at 128 (internal citation omitted).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."  *Id.*; *see* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  "Under Rule 55(b), a default judgment ordinarily must be entered by the district judge, rather than by the clerk of court . . . ."  *Id.*

"The Second Circuit has repeatedly noted that the disposition of a motion for default judgment is within the sound discretion of a district court."  *Doe v. Alsaud*, 12 F. Supp. 3d 684,

687 (S.D.N.Y. 2014) (quotation marks omitted) (citing cases).  But because there is "a strong preference for resolving disputes on the merits, and because a default judgment is the most severe sanction which the court may apply, [the Second Circuit has] characterized a district court's discretion in proceeding under Rule 55 as circumscribed."  *Mickalis Pawn Shop*, 645 F.3d at 129 (cleaned up).

## ANALYSIS

Plaintiff maintains that he is entitled to a default judgment against Defendant Mendez based on Defendant Mendez's failures to appear for a deposition and testify at trial.  ECF No. 407.

As described above, there is nothing in the record that would allow the Court to conclude that Defendant Mendez failed to appear for a deposition or otherwise failed to participate in discovery.  Neither Plaintiff (when he was proceeding *pro se* through the initial phase of discovery) nor his *pro bono* counsel (when discovery was reopened) ever notified the Court of any issues in obtaining discovery from Defendant Mendez.[2]  While the record is clear that Defendant Mendez was not deposed, it is not for the Court to speculate as to the reason why. The Court therefore cannot conclude that Defendant Mendez's failure to participate in discovery is a proper basis to find him in default.

With respect to Defendant Mendez's failure to appear at trial, the Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend'" within Rule 55(a), and found that the failure to appear for trial may be the basis for a finding of default under that rule.

---

[2] For example, there was never any application made for sanctions against Defendant Mendez pursuant to Rule 37(d)(1)(a)(i) of the Federal Rules of Civil Procedure for a failure to appear for a deposition after being served with proper notice.

5

*Mickalis Pawn Shop, LLC*, 645 F.3d at 123-25, 129-31.  Accordingly, the Court finds that Defendant Mendez's failure to appear at trial constitutes a default under Rule 55(a).

But even having found Defendant Mendez to be in default, the Court declines to enter a default judgment against Defendant Mendez under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  As noted above, the jury rendered a verdict in favor of all seven Police Defendants, including Defendant Mendez, on the sole claim asserted against him, for allegedly conducting an unreasonable search incident to Plaintiff's arrest.  "[A] default judgment that creates an 'incongruity' with a judgment on the merits is 'unseemly and absurd, as well as unauthorized by law.'"  *Henry v. Oluwole*, 108 F.4th 45, 54 (2d Cir. 2024) (quoting *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)).  Therefore, "'if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others.'"  *Id.* (quoting *Frow*, 82 U.S. at 554); *see also Moore v. Booth*, 122 F.4th 61, 67 (2d Cir. 2024) ("As we and other courts have recognized, *Frow* prohibits directly inconsistent judgments. For that reason, if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants.") (cleaned up).

Moreover, the Second Circuit,

> along with the majority of the federal appellate courts, ha[s] held that the *Frow* principle is not limited to cases of joint liability but more generally prohibits a default judgment that is inconsistent with a judgment on the merits.  As the Third, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits have explained, the *Frow* principle applies when the defendants are similarly situated or have closely related defenses even if not jointly liable.  The idea is that when facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved.

*Moore*, 122 F.4th at 67-68 (cleaned up) (footnotes omitted).

6

In deciding whether to vacate a default judgment that had been entered by the district court, the Second Circuit in *Henry* stated that "[f]irst, to determine whether [the plaintiff's] complaint justified the entry of a default judgment, we must consider whether her allegations constitute a valid cause of action.  Second, to comply with the *Frow* principle prohibiting inconsistent judgments, we must disregard the allegations in [the plaintiff's] complaint that conflict with the jury verdict."  108 F.4th at 55 (quotation marks omitted).

In this case, the sole claim that Plaintiff alleged against Defendant Mendez was for an unreasonable search incident to arrest, which Plaintiff asserted against all the Police Defendants.[3] And the sole allegation in the second amended complaint supporting this claim was that the Police Defendants "empt[ied] out [Plaintiff's] pockets, check[ed] [his] waistline, [and] reach[ed] down inside of [Plaintiff's] pants from the front side all the way from [his] underwear to [his] socks."  ECF No. 111 ¶ 33.  Because the jury found that Plaintiff had not proven that any of the Police Defendants, including Defendant Mendez, unreasonably searched him incident to his arrest, the Court must disregard Plaintiff's allegation that Defendant Mendez did.  *See Henry*, 108 F.4th at 55; *Moore*, 122 F.4th at 70 ("[W]hen facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff is estopped from obtaining a judgment against the latter defendant.  That is why, if the case has proceeded to trial, to comply with the *Frow* principle prohibiting inconsistent judgments, the district court must disregard the allegations in the complaint that conflict with the jury verdict.")

---

[3] While the verdict form listed the names of each of the individual Police Defendants and asked the jury to determine whether it found, by a preponderance of the evidence, "that the Defendant you are considering subjected the Plaintiff to an unreasonable search incident to his arrest," Plaintiff maintained throughout the trial that all the Police Defendants together participated in the unreasonable search incident to his arrest.

(cleaned up).  Consequently, there is no basis to grant Plaintiff default judgment against

Defendant Mendez.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a default judgment against Defendant

Mendez (ECF No. 407) is DENIED.

The Clerk of Court is respectfully directed to mail a copy of this Decision and Order to

the *pro se* Plaintiff.

Dated:  May 20, 2026
        White Plains, New York

**SO ORDERED.**

_____

ANDREW E. KRAUSE
United States Magistrate Judge

8